**UNITED STATES of America, Appellee,**

v.

**Anthony DiGERONIMO, George Holtmeyer, John Romeo and Robert Virga, Appellants.**

**Nos. 811–814, Dockets 78–1434 to 78–1437.**

United States Court of Appeals, Second Circuit.

Argued March 27, 1979.

Decided May 3, 1979.

Steven Lloyd Barrett, The Legal Aid Society, Federal Defender Services Unit, New York City, for appellant DiGeronimo.

Stanley M. Meyer, Brooklyn, N. Y. (Meyer, Light & London, Brooklyn, N. Y., of counsel), for appellants Holtmeyer, Romeo and Virga.

David V. Kirby, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., E. D. N. Y., Harvey M. Stone, Asst. U. S. Atty., of counsel), for appellee.

Before: MOORE, FEINBERG and MESKILL, Circuit Judges.

FEINBERG, Circuit Judge:

Anthony DiGeronimo, George Holtmeyer, John Romeo and Robert Virga appeal from judgments of conviction, after a jury trial in the United States District Court for the Eastern District of New York, for conspiring to steal goods moving in interstate commerce and to receive and possess those goods in violation of 18 U.S.C. § 371, for obstructing interstate commerce through robbery in violation of 18 U.S.C. § 1951 (the Hobbs Act) and for receiving and possessing goods stolen from interstate commerce in violation of 18 U.S.C. § 659. The trial judge, Chief Judge Jacob Mishler, sentenced DiGeronimo to five years on the conspiracy count and to eight years on each of the two substantive counts, the sentences to be served concurrently, and sentenced Virga and Holtmeyer to concurrent five year terms on each count and Romeo to three years on the conspiracy count and three years probation, consecutive to the prison term, on the other two counts. Appellants raise a number of contentions on appeal, of which the most significant is that the Hobbs Act count and the receipt of stolen goods count were multiplicitous. For reasons set forth below, we affirm the judgments of conviction of all appellants on the conspiracy and Hobbs Act counts, but conclude that the convictions for receipt and possession of stolen goods cannot stand.

I.

The convictions stem from the hijacking of a truck and the theft of a shipment of sweaters it was carrying. Around one o'clock in the afternoon of December 6, 1977, Vincent Spina, a truck driver, left Kennedy Airport with a full load of sweaters and headed for Damon Creations, Inc., in North Bergen, New Jersey. Spina was followed onto the Van Wyck Expressway by a white Mercury Cougar with a red top. The occupants apparently impersonated police officers by using a badge, flashing lights and a siren, and forced Spina to pull his truck over to the side of the road. Two men got out of the Cougar, approached the truck and, after an attempt by Spina to

escape, pulled out guns and threatened to kill him. While Spina was forced into the back of the Cougar, he noticed an old white car with two people in it some distance behind the Cougar. Spina's assailants drove him around Long Island for two and one-half hours and then released him at a train station. Spina later identified the two men as appellants Holtmeyer and Virga.

At 3:00 p. m. on the day of the hijacking, an eyewitness observed the hijacked truck speed around a corner and come to a stop on Barby Street in Brooklyn. The truck was empty at this time. The driver of the truck jumped out and got into a white 1970 Chevrolet that had followed the truck, which then sped off. The eyewitness took down the license number of the Chevrolet, which was identified as belonging to Pauline Camarda, an unindicted co-conspirator. The descriptions of the driver of the truck and the driver of the Chevrolet fit, respectively, appellants DiGeronimo and Romeo. The eyewitness noted that the driver of the truck was wearing a tan outfit. Forty-five minutes later, DiGeronimo and Romeo appeared at the West Hempstead office of DiGeronimo's parole officer, an office which is approximately 30 to 40 minutes by car from the Brooklyn site where the hijacked truck was dropped. The parole officer remembered that DiGeronimo was wearing a tan outfit. At the trial, Kevin Feeney, who was an employee of the Inn Pub, a bar in Oceanside, Long Island, testified that DiGeronimo, Holtmeyer and Romeo had held secret meetings in the back room of the pub in November and December and that around the 10th of December, DiGeronimo and Romeo began offering sweaters for sale in the pub.

All four appellants argue that the evidence against them was insufficient to establish their guilt beyond a reasonable doubt. We find this contention without merit and agree with Judge Mishler that "the evidence was overwhelming." Holtmeyer and Virga were identified by the victim truck driver in lineups and at trial. When faced with the possibility of appear-

ing in a lineup, Virga grew a beard and then shaved his head and changed the beard to a mustache. The jury could have found that this was an attempt to conceal his identity and thus showed Virga's consciousness of guilt. There was also evidence of Holtmeyer's consciousness of guilt. When Holtmeyer found out that Kevin Feeney had testified before the grand jury, he was very concerned and interested in what Feeney had been asked; at one point Holtmeyer frisked Feeney for a recording device and threatened him to keep him quiet. In addition, Holtmeyer's police badge was identified as the one used by the hijackers.

There was also substantial evidence that Romeo and DiGeronimo were the two men who had dropped off the hijacked truck in Brooklyn on the day of the hijacking. The timing, the clothes and the physical appearance of the two men all support this finding. Romeo and DiGeronimo were also seen in the secret meetings at the Inn Pub, and they were observed selling sweaters which could have been stolen from the truck. The Cougar used in the hijacking was rented to Romeo and telephone records showed that a collect telephone call had been made to Romeo's residence from a phone booth not far from the scene of the hijacking about half an hour prior to the hijacking.

Although we have summarized only a portion of the evidence introduced against appellants, we think this summary shows that the evidence was more than sufficient to support their convictions.

## II.

Appellants also argue that they were improperly convicted of both interference with interstate commerce by means of robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951, and of knowing receipt and possession of stolen goods, in violation of 18 U.S.C. § 659. They claim that a defendant may not be convicted of both robbing a truck and receiving and possessing the goods that are the subject of the robbery conviction. Appellants further contend that they must be given a new trial since it

is impossible to determine on which count, if any, the jury would have convicted them if it had been instructed that they could not be convicted of violating both section 659 and section 1951.

Appellants rely on a line of cases beginning with *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), in which the Supreme Court held that a bank robber could not be convicted and consecutively punished for both robbery and entry of a bank with intent to commit robbery, in violation of 18 U.S.C. § 2113. Entry to commit robbery, the Court said, was made illegal in order to reach a new class of culprits, those who fall short of their purpose. Two years later, in *Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959), the Court held that convictions for separate counts of bank robbery and receipt and possession of the stolen proceeds could not stand. *Heflin* was reaffirmed in 1976 in *United States v. Gaddis*, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222, in which the Court stated that an individual could not be convicted of both bank robbery and receipt or possession of the proceeds of that robbery because in the subsection covering receipt and possession " 'Congress was trying to reach a new group of wrongdoers [those who receive the loot from the robber], not to multiply the offense of the bank robbers themselves.' " *Id.* at 547, 96 S.Ct. at 1026, quoting *Heflin v. United States, supra,* 358 U.S. at 419–20, 79 S.Ct. 451. In *Milanovich v. United States*, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), the Court extended the multiplicity doctrine beyond the federal bank robbery statutes. *Milanovich* held that a defendant could not be convicted of both stealing government property and of receipt and concealment of that property, both defined as offenses under 18 U.S.C. § 641. The Court found "nothing in the language or history of [section 641] which leads to a different conclusion [from *Heflin*]." 365 U.S. at 554, 81 S.Ct. at 729–30.

*Prince, Heflin, Gaddis* and *Milanovich,* were all based on statutory construction, not on constitutional or common law

grounds. Although the statutes here involved were not construed in those decisions, we believe that they frame the issue before us: Did Congress intend to pyramid the punishment of those persons who commit robbery in interstate commerce and then receive or possess the stolen goods or was the latter prohibition designed to "reach a new group of wrongdoers"? We feel justified in putting the question that way even though the Hobbs Act also prohibits conduct obstructing commerce other than by robbery, e. g., by extortion or by threat of violence, because the prosecution's theory here was that defendants violated the Hobbs Act by robbing the truck and the judge charged the jury on that theory.[1] Therefore, we need not consider how the inquiry before us would be changed by a different factual pattern.

▮ Turning then to the question thus posed, we look to the Supreme Court cases for guidance. Congress' intent to provide multiple convictions and punishments for the same acts must be clear and "without ambiguity." *Bell v. United States*, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955). When the intent of Congress in punishing multiple aspects of the same acts is unclear, courts resolve the "ambiguity in favor of lenity." *Heflin v. United States, supra*, 358 U.S. at 419, 79 S.Ct. 451. See also, e. g., *Simpson v. United States*, 435 U.S. 6, 14, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). As the

Court has observed, when Congress intends to impose a harsher penalty, "the result [can be] accomplished easily with certainty rather than by indirection." *Prince v. United States, supra*, 352 U.S. at 328, 77 S.Ct. at 407.

We have found nothing in the language or legislative history of section 659 to indicate that Congress intended to subdivide the crime of robbery from interstate shipments into multiple offenses, each justifying separate conviction and punishment. The predecessor to section 659, which deals with theft from interstate or foreign shipments by carrier, was enacted in 1913. Act of Feb. 13, 1913, ch. 50, 37 Stat. 670. That statute, like section 659, proscribed both the stealing from interstate shipments and the receipt or possession of the stolen goods. We see no reason to think that after *Heflin* and *Gaddis, supra*, the Supreme Court would hold that appellants here could have been found guilty under section 659 both of stealing the sweaters from the truck and of receiving them. We realize that appellants were indicted for the theft here under the Hobbs Act, not under section 659. But as already indicated, the focus at trial was on the "robbery" language in the Hobbs Act.[2] We do not suggest that this was improper, but as a result the Hobbs Act count on these facts served as a functional substitute for a charge under the theft provisions of section 659.[3] Under those circumstances, we believe that the Supreme Court deci-

1. The Hobbs Act provides, in relevant part:
   Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

2. See note 1, *supra*.

3. Section 659 provides, in relevant part:
   Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any pipeline system, railroad car, wagon, motortruck, or other vehicle, or from any tank or storage facility, station, station house, platform or depot or from any steamboat, vessel, or wharf, or

from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express, or other property; or
Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen;

Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both; but if the amount or value of such money, baggage, goods or chattels does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

sions suggest that the convictions here for hijacking the truck and for receipt of the stolen sweaters were multiplicitous. We have found no support in the legislative history of the Hobbs Act or its predecessor, see, e. g., S.Rep.No. 1516, 79th Cong., 2d Sess. (1946); H.R.Rep.No. 238, 79th Cong., 1st Sess. (1945); S.Rep.No. 532, 73d Cong., 2d Sess. (1934); H.R.Rep.No. 1833, 73d Cong., 2d Sess. (1934); see also, *United States v. Culbert,* 435 U.S. 371, 98 S.Ct. 1112, 55 L.Ed.2d 349 (1978), for the proposition that Congress, in enacting the Hobbs Act, wanted to punish separately and cumulatively the crimes of robbing a truck of its contents and receiving the stolen goods.

The government argues that two of our prior decisions, *United States v. Meduri,* 457 F.2d 330 (2d Cir. 1972) and *United States v. Cusumano,* 429 F.2d 378 (2d Cir.), cert. denied sub nom. *Riggio v. United States,* 400 U.S. 830, 91 S.Ct. 62, 27 L.Ed.2d 61 (1970), establish that under 18 U.S.C. § 659 convictions for both theft and possession of the proceeds are permissible. In *Cusumano,* our opinion dealt with the contention on appeal that the government had to elect, before its case was submitted to the jury, between the theft and possession counts. We held that no such election was required and affirmed the convictions, albeit without discussing the further argument made there that conviction on both counts was, in any event, barred by *Milanovich.* In *Meduri,* however, we felt constrained by the then recent result in *Cusumano* to uphold conviction on both counts; we therefore held that a defendant "could . . . be convicted both of stealing [a] tractor-trailer containing an interstate shipment of goods and of illegal possession of such goods, [where] the stealing and the possession were separated by appreciable periods of time and space." 457 F.2d at 331. It might be possible to distinguish *Meduri* on its facts, since the government concedes that the stealing and

possession here were not separated by time and space, but rather the trial was conducted on the theory that the receipt and possession charged in the indictment was "the receipt of the hijacked load . . . and not some subsequent receipt of the goods, nor some subsequent possession." But much more significantly, we think that *Meduri* can no longer be considered valid after the Supreme Court's later decision in *United States v. Gaddis, supra,* 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 227. In *Gaddis* the Court referred to "the discordant views in the Circuits regarding the proper application of the *Heflin* and *Milanovich* decisions" [4] and clarified the teachings of those cases. *Gaddis* makes clear that when a defendant is charged under the bank robbery statute, 18 U.S.C. § 2113, with both robbing a bank and receiving or possessing the proceeds and where there is evidence sufficient to support conviction on either count, the proper procedure is to send both counts to the jury with the instruction that they should first consider whether the defendant participated in the theft or robbery, and only if this inquiry is answered in the negative should they consider the receipt and possession count.

Accordingly, we conclude that our prior decisions do not control and that the count under the Hobbs Act for robbery of the truck and the count under 18 U.S.C. § 659 for receipt and possession of the proceeds were multiplicitous. See *United States v. Solimine,* 536 F.2d 703, 709–11 (6th Cir.), vacated on other grounds, 429 U.S. 990 (1976), cert. denied sub nom. *Sclafani v. United States,* 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 596 (1977). On this view of the case, it was therefore error for the trial judge not to instruct the jury that appellants could not be convicted under both the Hobbs Act and section 659. The government, however, argues that appellants waived their right to make this argument

---

4. One of the decisions referred to was our own in *United States v. Ploof,* 464 F.2d 116, 119–20 (2d Cir.), cert. denied sub nom. *Godin v. United States,* 409 U.S. 952, 93 S.Ct. 298, 34 L.Ed.2d 224 (1972), which stated in dictum that a de- fendant can be convicted both of transporting a stolen motor vehicle under 18 U.S.C. § 2312 and of receiving and concealing it under 18 U.S.C. § 2313.

to us because they made no such objection in the trial court. Appellants rely on the plain error doctrine. In *Gaddis, supra*, the Supreme Court implicitly approved the Fifth Circuit's holding that " 'it is plain error to allow a jury to convict an accused of taking and possessing the same money obtained in the same bank robbery,' " 424 U.S. at 547, 96 S.Ct. at 1025–26, quoting *United States v. Gaddis*, 506 F.2d 352, 354 (5th Cir. 1975). In view of *Gaddis*, we find that the failure to charge the jury that appellants should not be convicted under both section 659 and section 1951 was plain error which must be faced on appeal.

Relying on *Milanovich*, appellants assert that they must be given a new trial because "there is no way of knowing whether a properly instructed jury would have found [them] guilty of [robbery] or of receiving (or, conceivably, of neither)." 365 U.S. at 555, 81 S.Ct. at 730. The Fourth Circuit had remedied the multiplicity in *Milanovich* by vacating the conviction of receiving, while leaving standing the larceny conviction, for which the appellant had been given a harsher sentence. The Supreme Court reversed, noting that the appellant's prison sentence on the larceny count was double that given a codefendant (her husband) for the identical offense. The Court stated:

> [W]e cannot say that the mere setting aside of the shorter concurrent sentence sufficed to cure any prejudice resulting from the trial judge's failure to instruct the jury properly. It may well be, as the Court of Appeals assumed, that the jury, if given the choice, would have rendered a verdict of guilty on the larceny count, and that the trial judge would have imposed the maximum . . . sentence on that count alone. But for a reviewing court to make those assumptions is to usurp the functions of both the jury and the sentencing judge.

365 U.S. at 555–56, 81 S.Ct. at 730. This holding of *Milanovich*, however, must be read in light of the subsequent decision in *Gaddis, supra*, in which the Court explained that a new trial is not necessary in every instance where a defendant is convicted both of theft and of receipt of the proceeds.

A new trial was not required in *Gaddis* because the only evidence that the defendants had received the proceeds was that they had participated in the robbery, so there was insufficient proof on the receiving count. 424 U.S. at 549, 96 S.Ct. 1023.

The Court in *Gaddis*, as already indicated, also explained the duties of the trial court in a similar situation where there is sufficient evidence on both counts. The trial court should instruct the jury first to consider the robbery charge, and only if the defendant is found not guilty of this crime to proceed to the receipt or possession count. 424 U.S. at 550, 96 S.Ct. 1023. The majority in *Gaddis* did not indicate the proper remedy if the trial court does not properly instruct the jury on this point. However, Justice White's view, expressed in a separate concurring opinion, was that a new trial is unnecessary:

> As the Court states, a jury, having convicted on the robbery count, should stop there without going on to consider the possession count. If the jury is erroneously permitted, however, to consider and convict on the possession count as well, such a conviction casts absolutely no doubt on the validity of the robbery conviction. Under such circumstances it is not impossible to say upon which count, if either, a properly instructed jury would have convicted the defendant. It may be concluded with satisfactory certainty that the jury, having convicted for both offenses, would have convicted of robbery if it had been properly instructed. The verdict on the robbery count shows that the jury found each element of that offense to have been established beyond a reasonable doubt. That the jury went on to find that the defendant also possessed the proceeds of the robbery—whether on a different date and on different proof or not—casts no doubt on the trustworthiness of the findings on the robbery count. . . . In the class of cases governed by *Milanovich*, the robbery count is untainted by the fact that in addition to its finding of guilty on that count the jury also made findings on the possession

count, for those findings are factually consistent with the findings on the robbery count.

424 U.S. at 551–52, 96 S.Ct. at 1028. Since *Gaddis*, three circuits have adopted the reasoning of Justice White, and in the same or analogous situations have concluded that a new trial is not required where the jury convicts a defendant of both robbery (or theft) and receipt and possession of the proceeds (or disposing of the proceeds). *United States v. Crawford*, 576 F.2d 794, 800-01 (9th Cir.), cert. denied, 439 U.S. 851, 99 S.Ct. 157, 58 L.Ed. 155 (1978); *Proffitt v. United States*, 549 F.2d 910, 912 (4th Cir. 1976), cert. denied, 429 U.S. 1076, 97 S.Ct. 198, 50 L.Ed.2d 158 (1977); *United States v. Sellers*, 547 F.2d 785, 786 (4th Cir. 1976), cert. denied, 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977); *United States v. Solimine*, 536 F.2d 703, 711 (6th Cir.), vacated on other grounds, 429 U.S. 990, 97 S.Ct. 517, 50 L.Ed.2d 603 (1976), cert. denied sub nom. *Sclafani v. United States*, 430 U.S. 918, 97 S.Ct. 1333 (1977).

We agree that it is not impossible in this situation to determine how a properly instructed jury would have decided. Here the jury's verdict indicates that it found as a matter of fact that all four appellants participated in the robbery and then kept the proceeds. Since a properly instructed jury would have stopped with the former finding, "[i]t may be concluded with satisfactory certainty that the jury  .  .  . would have convicted of robbery [violating the Hobbs Act] if it had been properly instructed." *United States v. Gaddis, supra*, 424 U.S. at 551, 96 S.Ct. at 1028 (White, J., concurring). The proper remedy, as Judge Adams pointed out in *United States v. Solimine, supra*, 536 F.2d at 711, is for the appellate court to vacate the conviction and sentence with respect to the multiplicitous count, which in this case is the charge of receipt and possession under section 659. Accordingly, we vacate the convictions of appellants under that count.

### III.

All appellants object to the admission of evidence of appellant DiGeronimo's partici-

pation in other hijackings. At the end of its case in chief, the government presented the testimony of an FBI agent who stated that DiGeronimo had admitted to previously participating in the hijacking of a truckload of palladium ingots at Kennedy Airport, to receiving and transporting a load of stolen raincoats and to selling stolen goods in bars in the Oceanside, Long Island area, particularly in the "Incident Bar" (the prior name of the Inn Pub). The jury was instructed that the evidence could be considered only against DiGeronimo and only for the limited purpose of identification of DiGeronimo as one of the participants in the hijacking.

Under our precedents, the trial court must perform a two-step analysis of other crimes evidence prior to admitting it. First, the evidence must be relevant to some issue at trial other than "to prove the character of a person in order to show that he acted in conformity therewith," as required by Fed.R.Evid. 404(b). Second, even if the evidence is relevant, the trial court must determine under Fed.R.Evid. 403 that the probative worth of, and the government's need for the evidence is not substantially outweighed by its prejudice to the defendant. See, e. g., *United States v. Gubelman*, 571 F.2d 1252, 1254 (2d Cir.), cert. denied, 436 U.S. 948, 98 S.Ct. 2853, 56 L.Ed.2d 790 (1978). The other crimes evidence here was admitted under Rule 404(b) to show the identity of DiGeronimo as one of the hijackers. There is no doubt that identity was a real issue in this case. In fact, the court instructed the jury that "the most important issue in this case is the identification of the accused as the perpetrator or perpetrators of the crime." Under our recent cases, e. g., *United States v. Danzey*, 594 F.2d 905 (2d Cir. 1979); *United States v. Gubelman, supra*, 571 F.2d 1252, the evidence concerning DiGeronimo's prior criminal activities was relevant. The prior hijacking also occurred at Kennedy Airport and was committed in a similar fashion. The selling of stolen merchandise occurred in the same bar where DiGeronimo alleged-

ly sold the stolen sweaters. DiGeronimo stresses that the evidence, even if admissible under Rule 404(b), should have been excluded under Rule 403 because its prejudicial effect substantially outweighed its probative force. The trial court found that the evidence's "probative value far outweighs the prejudicial effect." Weighing the value of this type of evidence is primarily the responsibility of the trial judge, and he "has broad discretion under Rule 403 . . . to admit relevant other crimes evidence." *United States v. Williams*, 577 F.2d 188, 193 (2d Cir.), cert. denied, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). We find that the district court did not abuse its discretion in this case.

The other three appellants argue that there was inevitably a spillover prejudice to them from the admission of the other crimes evidence against DiGeronimo. We find that the court's detailed instructions that the evidence was to be considered only against DiGeronimo adequately protected the other defendants.

■ Relying on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), DiGeronimo also argues that his Sixth Amendment right of confrontation was violated by the admission of hearsay statements of a co-defendant. An FBI agent who had questioned appellant Holtmeyer testified that Holtmeyer had said that he and DiGeronimo had been "inseparable" during the period just prior to and after the hijacking, that DiGeronimo was a good friend of John Romeo and that Holtmeyer, a former police officer, had been asked to keep DiGeronimo out of trouble. Co-defendant Holtmeyer did not testify at the trial. DiGeronimo claims that it was a violation of the *Bruton* rule to introduce these statements by Holtmeyer. However, the jury had already been made aware that DiGeronimo was a parolee, so no further harm could come from Holtmeyer's reference to keeping DiGeronimo out of trouble. DiGeronimo's main argument is that the statements established his constant association with one of the identified hijackers during the period which encompassed the

formulation, execution and completion of the hijacking. However, Holtmeyer's statements were only cumulative evidence on this point. The association between Holtmeyer and DiGeronimo was brought out by the testimony of Kevin Feeney, who stated that they were steady customers of the Inn Pub, that they primarily socialized with each other on their visits to the pub and that Holtmeyer, DiGeronimo and Romeo had held secret meetings in the back room of the pub. In addition, DiGeronimo's own statement that he had been living at Pauline Camarda's apartment with Holtmeyer was admitted into evidence. Given the other evidence of the association between Holtmeyer and DiGeronimo, DiGeronimo was not harmed by the admission of the hearsay statements of Holtmeyer concerning that fact.

■ Appellants also argue that their due process rights were violated by the trial court's instruction that the jury could infer from a defendant's unexplained possession of recently stolen property that he participated in the theft. They argue that this inference no longer accords with reality because the offense of robbery has become specialized and "it is most common for two separate parties—the thief and the fence— each to perform a specialized task entailing different risks and 'skills.'" We have most recently considered the validity of a similar inference in *United States v. Tavoularis*, 515 F.2d 1070, 1074–75 (2d Cir. 1975). In *Tavoularis* we held that the inference "in light of the other evidence in the case . . . would verge on the irrational." *Id.* at 1075. Thus we declined to decide "whether, in the abstract, the inference of participation in the theft from unexplained possession of recently stolen goods comports with due process requirements . . . ." *Id.* at 1074–75. In *Tavoularis* the government's own evidence tended to show that the defendant had not participated in the theft, but was merely a middleman. We noted that "[i]t may well be that a factor relevant to the determination of [the validity of the inference] in any particular case would be whether, on the one hand, the inference was

the *only* evidence tending to prove an essential element of the crime, or the jury was told that the inference *alone* was sufficient to establish such an element, or, on the other hand, the inference was but one bit of circumstantial evidence among many." *Id.* at 1075 n.11. In this case there was substantial other evidence linking each defendant to the hijacking. In addition, the jury was told to draw those inferences in accord with common sense and their experience. Under these circumstances, we find that the instruction with regard to the inference did not violate appellants' due process rights.

Finally, appellants claim that Judge Mishler erred in his instructions to the jury on the conspiracy count. The argument is that the conspiracy charged had the dual object of hijacking the truck and receiving and possessing the hijacked goods, but that the jury was erroneously told that it could find a defendant was a member of the conspiracy with knowledge of only one of the conspiracy's objects. But contrary to appellants' argument, we have held that when a conspiracy has more than one objective the government need prove as to a particular defendant only that he "agreed to accomplish at least one of the criminal objectives." *United States v. Papadakis,* 510 F.2d 287, 297 (2d Cir.), cert. denied, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975). See also *United States v. Bernstein,* 533 F.2d 775, 793–94 (2d Cir.), cert. denied, 429 U.S. 998, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976). Moreover, as already indicated, the case was not tried as though the receipt and possession of the sweaters were a different occurrence from the hijacking, separated by time or geography. In the factual context of this trial, knowledge of one object compelled an inference of knowledge of the other. Finally, the argument belatedly offered by DiGeronimo and hardly made at all by the other appellants was not raised in the trial court.[5] Under the circumstances, we find no plain error.

In conclusion, we affirm the convictions of all appellants on the conspiracy count and on the Hobbs Act count. We vacate the convictions of all appellants on the receiving and possessing count under 18 U.S.C. § 659 as multiplicitous. We see no need, however, to remand for resentencing on the other counts, as doing so, in the context of the judge's intention at sentencing, "would be needlessly time consuming and a meaningless act." See *Gorman v. United States,* 456 F.2d 1258, 1260 (2d Cir. 1972).

---

**5.** Only DiGeronimo briefed this point before us; the other appellants ignored it until oral argument when they joined in the arguments of their co-appellant to the extent applicable.