UNITED STATES of America,
Plaintiff–Appellee,

v.

Vincent Edward BROWN,
Defendant–Appellant.

No. 92–7006.

United States Court of Appeals,
Tenth Circuit.

June 22, 1993.

John Raley, U.S. Atty., and Joseph F. Wilson, Asst. U.S. Atty., Muskogee, OK, for plaintiff/appellee.

Gerald Miller of Jones & Miller, Muskogee, OK, for defendant/appellant.

Before ANDERSON, and EBEL, Circuit Judges, and LUNGSTRUM, District Judge.*

EBEL, Circuit Judge.

The appellant-defendant, Vincent Edward Brown, was charged in a three count indictment with various offenses arising out of the theft of cases of liquor from a J.B. Hunt Transport Truck in McAlester, Oklahoma. Count one charged the defendant with conspiring to steal goods in interstate commerce in violation of 18 U.S.C. §§ 371[1] and 659[2]. Count two charged the defendant with stealing goods in interstate commerce in violation of 18 U.S.C. § 659. Count three charged the defendant with possessing such goods in violation of 18 U.S.C. § 659. A jury found the defendant guilty on each count and the defendant was sentenced to three, concurrent, twelve-month terms of imprisonment. The defendant was also sentenced to three, concurrent, three-year terms of supervised release and ordered to pay restitution to J.B. Hunt Transport Company in the amount of $605.37.

On appeal, the defendant challenges his conviction on two grounds: 1) that the trial judge erred by failing to instruct the jury that it could not convict the defendant for both theft and possession of stolen goods, and 2) that the evidence to support his conviction for conspiracy was insufficient. After considering both of the defendant's contentions, we affirm the defendant's convictions for theft and conspiracy and direct the district court to vacate the defendant's conviction for possession.

## FACTS

Viewing the evidence in the light most favorable to the prosecution, the jury could have found the following facts. On August 16–17, 1991, Michael Jackson, an employee of J.B. Hunt Transport Company, drove a J.B. Hunt Transport truck from Bardstown, Kentucky to McAlester, Oklahoma. The truck was loaded with 1,321 cases of liquor des-

---

* The Honorable John W. Lungstrum, District Judge, United States District Court for the District of Kansas, sitting by designation.

1. Section 371 provides in relevant part:

 If two or more persons conspire ... to commit any offense against the United States ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 18 U.S.C. § 371.

2. Section 659 provides in relevant part:

 Whoever embezzles, steals, or unlawfully takes, carries away or conceals ... from any motor- truck, or other vehicle ... with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express, or other property; or

 Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen;

 . . . . .

 Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both; but if the amount of value of such money, baggage or goods or chattels does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.
 18 U.S.C. § 659.

tined for the Dixie Liquor Company located in McAlester.

Jackson arrived in McAlester on the evening of August 17 and stopped at a convenience store to ask directions to the Dixie Liquor Company. He met an individual outside the store from whom he purchased $70 worth of cocaine. After smoking the cocaine, Jackson proceeded to Leo's Club, a local night spot. Outside the club, he saw the individual he had encountered at the convenience store and purchased an additional $50 worth of cocaine from this individual. Jackson left the club to smoke the cocaine with Teresa Jones, a woman he had just met at the club. Jackson and Jones subsequently returned to the club, where Jackson purchased additional cocaine from several individuals. In exchange for the cocaine, Jackson traded approximately eight to ten cases of liquor from his truck. This time, Jackson and Jones left the club to smoke the cocaine at Jones' house.

While Jackson was at Jones' house, the defendant and five other men arrived at the house and were admitted by Jones. One of these men placed $180.00 worth of cocaine in Jackson's hand and asked whether he and his companions could get some liquor from Jackson's truck in exchange for the cocaine. Jackson agreed to the proposed exchange and stated that the men could unload as much liquor as they wanted until they got tired. When Jackson expressed concern about consummating the deal at the house, however, Jackson was told to wait while the defendant and three other men left the house to find a place to unload the truck. When the four men returned, Jackson was instructed to follow them in his truck to the farm of Billy Frank Cockerhan, who lived several miles outside of town. Earlier in the evening, Cockerhan had agreed to the defendant's request to store two cases of liquor on his property.

Upon arriving at Cockerhan's farm, the defendant and his companions proceeded to unload over 100 cases of liquor from Jackson's truck into a horse trailer. When Cockerhan objected to the amount of liquor being unloaded, the defendant informed Cockerhan of the deal that they had negotiated with Jackson. Cockerhan relented and allowed the defendant and his companions to continue unloading cases of liquor. When Jackson eventually delivered his liquor shipment to the Dixie Liquor Company the following morning, the shipment was 187 cases short.

Jackson initially claimed that the missing liquor had been stolen without his knowledge but he subsequently confessed that he had sold the liquor himself. After reading an account of Jackson's confession in the newspaper, Cockerhan told the defendant to remove the liquor from his property. The defendant informed Cockerhan that he would look for a truck in which to transport the liquor. Later, the defendant called Cockerhan back, and after being informed by Cockerhan's wife that her husband was not at home, told her to tell her husband "not to get rid of it until I come by tomorrow and pick it up." Soon after this call, all the liquor disappeared from Cockerhan's property, except for ten cases given to Cockerhan by the defendant.

On August 21, 1991, the FBI executed a search warrant at the residence of Ann Walker, the defendant's girlfriend, and discovered six cases of the liquor missing from Jackson's truck. These cases had been brought to Walker's residence by the defendant, who told her not to worry about where the liquor came from and that he got it cheap. When questioned about these cases by the FBI, the defendant stated that he bought these cases from Jackson at Leo's club and that he never saw Jackson again following the transaction. Later, at trial, the defendant recanted part of this statement and admitted that he had watched Jackson's truck being unloaded at Cockerhan's farm.

## DISCUSSION

### I. *The Jury Instructions*

■ The defendant's first claim is that the trial judge erred by failing to instruct the jury that it could not convict him for both theft and possession of stolen goods. Since the defendant failed to raise this claim in the trial court, we may review this claim on appeal only if the judge's failure to instruct the jury amounted to plain error. Fed.

R.Crim.P. 52(b); *United States v. Lacey*, 969 F.2d 926, 928 (10th Cir.1992), *vacated on other grounds*, — U.S. —, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993).

■ To constitute plain error, the district court's error must have been both "obvious and substantial." *United States v. Mitcheltree*, 940 F.2d 1329, 1333–34 (10th Cir. 1991); *United States v. Jefferson*, 925 F.2d 1242, 1254 (10th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 239, 116 L.Ed.2d 194 (1991). An error is substantial if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Mitcheltree*, 940 F.2d at 1333 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). In the instant case, we conclude, and the government concedes, that the district court's failure to instruct the jury that the appellant could not be convicted of both theft and possession amounted to plain error.

It is well established that a defendant may not be convicted for both stealing and possessing the same property, unless Congress specifically intended to treat each act as a separate offense. *See United States v. Gaddis*, 424 U.S. 544, 547–48, 96 S.Ct. 1023, 1025–26, 47 L.Ed.2d 222 (1976) (applying 18 U.S.C. § 2113); *Milanovich v. United States*, 365 U.S. 551, 553–54, 81 S.Ct. 728, 729–30, 5 L.Ed.2d 773 (1961) (applying 18 U.S.C. § 641); *Heflin v. United States*, 358 U.S. 415, 419–20, 79 S.Ct. 451, 453–54, 3 L.Ed.2d 407 (1959) (applying 18 U.S.C. § 2113); *Jenkins v. United States*, 361 F.2d 615, 617–18 (10th Cir.1966) (applying 18 U.S.C. § 2113); *Glass v. United States*, 351 F.2d 678, 681 (10th Cir.1965) (applying 18 U.S.C. § 2113). Nothing in the language or legislative history of 18 U.S.C. § 659 indicates that Congress intended to treat the theft and possession of interstate goods in violation of this section as multiple offenses. *United States v. Solimine*, 536 F.2d 703, 710–11 (6th Cir.), *vacated on other grounds*, 429 U.S. 990, 97 S.Ct. 517, 50 L.Ed.2d 603 (1976); *cf. United States v. DiGeronimo*, 598 F.2d 746, 748–52 (2d Cir.) (concluding that Congress did not intend to punish separately robbery in violation of 18 U.S.C. § 1951 and possession in violation of § 659), *cert. denied*, 444 U.S. 886, 100 S.Ct. 180, 62 L.Ed.2d 117 (1979). Accordingly, the appellant could not lawfully have been convicted for both theft and possession under 18 U.S.C. § 659, *see Garber*, 626 F.2d at 1153; *Solimine*, 536 F.2d at 710–11, and the district court committed obvious and substantial error in failing to so instruct the jury, *see DiGeronimo*, 598 F.2d at 752.

■ The fact that the defendant received concurrent sentences on both the theft and possession charges does not undermine our conclusion that the district court's error was substantial. As we noted in *United States v. Montoya*, 676 F.2d 428, 432 (10th Cir.), *cert. denied*, 459 U.S. 856, 103 S.Ct. 124, 74 L.Ed.2d 108 (1982), "adverse collateral consequences inexorably flow from most criminal convictions." These consequences include

the possible effect on parole, the application of habitual criminal statutes in those states which view each count as a separate offense, use of the unreviewed conviction for impeachment purposes in a subsequent case, stigma from conviction of certain types of crimes, and forfeiture of civil rights and employment opportunities.

*Id.* In light of these consequences, and the fact that the concurrent sentence doctrine is discretionary rather than jurisdictional, we proceeded in *Montoya* to review all of the defendant's convictions under a multi-count indictment, notwithstanding the fact that his sentences under the various counts were concurrent. *See also Newman v. United States*, 817 F.2d 635, 637 (10th Cir.1987); *United States v. Varoz*, 740 F.2d 772, 774 (10th Cir.1984); *United States v. Valentine*, 706 F.2d 282, 292 n. 9 (10th Cir.1983). These same consequences compel us to conclude in the instant case that, despite the existence of concurrent sentences, the district court's error in instructing the jury seriously affected the substantial rights of the defendant.

■ Having concluded that the district court committed plain error, we must determine the appropriate relief. While the defendant argues that the proper remedy is to reverse his convictions for theft and possession and remand both counts for a new trial, the government argues that the district court's error may be adequately corrected

merely by vacating the defendant's conviction for possession.

The Supreme Court has addressed the issue of the proper remedy for a multiplicitous conviction for theft and possession on two occasions. In *Milanovich v. United States*, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), Mrs. Milanovich, one of the defendants, was convicted under 18 U.S.C. § 641 for stealing currency from a United States commissary store and for possessing this stolen currency. She was sentenced to 10 years on the theft charge and 5 years on the possession charge. Although there was a 17–day span between the time she assisted in the robbery and the time she took possession of the stolen currency, the Supreme Court held that her conviction for both theft and possession was improper. The Court concluded that the appropriate remedy was to remand the case for a new trial. The Court reasoned that since there was "no way of knowing whether a properly instructed jury would have found the [defendant] guilty of larceny or of receiving," it was improper merely to vacate the shorter sentence corresponding to the latter charge. *Id.* at 555, 81 S.Ct. at 730. The Court acknowledged that the sentencing court might very well have increased Mrs. Milanovich's sentence from 5 to 10 years had the jury convicted her of possession instead of theft, but argued that "for a reviewing court to make [such an assumption] would usurp the functions of both the jury and the sentencing judge." *Id.* at 555–56, 81 S.Ct. at 730–31.

Fifteen years later, the Supreme Court revisited the question of the proper remedy for a multiplicitous conviction for theft and possession in *United States v. Gaddis*, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976). In *Gaddis*, the defendant was convicted of three counts under 18 U.S.C. § 2113 for aggravated bank robbery, possession of the funds stolen in the robbery, and assault with a dangerous weapon during the robbery. The defendant received 20 years on the robbery count, 10 years on the possession count, and 25 years on the assault count. As in *Milanovich*, the Court held that the defendant's conviction for both robbery and possession was improper. However, the

Court concluded that the appropriate remedy was to vacate the defendant's conviction for possession, not to remand the case for a new trial. The Court distinguished its opinion in *Milanovich* on the grounds that the "very unusual facts" in *Milanovich* clearly supported a conviction for both theft and possession, while in *Gaddis* there was no evidence that the defendants had ever received the bank's funds. *Id.* at 549, 96 S.Ct. at 1027. Thus, the Court found that the trial judge should have dismissed the possession conviction and concluded that "[h]is error in not doing so can be fully corrected now by the simple expedient of vacating the convictions and sentences under that count." *Id.*

The Court went on to discuss the situation where the evidence is sufficient to support both a conviction for theft and possession. The Court stated that in such a situation both charges should go to the jury, but that the jury must be instructed that they may only convict on one of these charges and that they must first consider the charge of theft. *See id.* at 550, 96 S.Ct. at 1027. The Court did not mention what the proper remedy would be if the jury were not so instructed.

In the instant case, there was sufficient evidence to support convictions on both the theft and possession counts. Accordingly, the question presented by this case is whether, after *Gaddis*, a new trial is required in those cases where the theft and possession counts are properly submitted to the jury. We believe that a new trial is not required in such a situation. Although *Milanovich* concluded to the contrary, we believe the rationale for this conclusion was undermined by *Gaddis*, notwithstanding the fact that *Gaddis* stopped short of explicitly deciding this particular issue.

Prior to *Gaddis*, a trial court submitting multiplicitous counts of theft and possession to a jury was required to instruct the jury only that they could not convict on both charges. *See Milanovich*, 365 U.S. at 554–55, 81 S.Ct. at 729–30 (requiring only that the jury be instructed that "a guilty verdict [may] be returned upon either count but not both"). Under that standard, *Milanovich* was correct in concluding that where a defendant had been convicted of both theft and

possession it was impossible to know on which count a properly instructed jury would have found the defendant guilty. In *Gaddis*, however, the Court refined the content of the instructions that a trial court was required to present to a jury before submitting multiplicitous counts for a verdict. *Gaddis* stated that the jury had to be instructed not only that it could not convict a defendant of both theft and possession, but that it had to consider the theft charge first. *See Gaddis*, 424 U.S. at 550, 96 S.Ct. at 1027. In light of this more precise instruction, it is no longer impossible to know on which charge a properly instructed jury would have convicted when a defendant is found guilty of both theft and possession. Rather, we can say with sufficient certainty that the jury would have returned a single conviction for theft.

Accordingly, we conclude that the proper remedy in the instant case is simply to vacate the defendant's conviction for possession. In light of *Gaddis*, such a remedy would put the defendant in the same position he would have been in had the jury been properly instructed. Given this result, a new trial would simply involve the "unnecessary expenditure" of judicial resources. *See United States v. Perez*, 989 F.2d 1574, 1581 (10th Cir.1993) (modifying per se rule of reversal for erroneous admissions of hearsay statements by co-conspirators).

Our conclusion that a new trial is not required in the instant case is consistent with Justice White's concurring opinion in *Gaddis*. Justice White wrote separately in *Gaddis* specifically to address the question left unanswered by the majority of whether a new trial was required where the defendant was convicted of both theft and possession and both counts were properly submitted to the jury. He concluded that a new trial was not required in such a situation, reasoning that

> [i]f the jury is erroneously permitted ... to consider and convict on the possession count as well, such a conviction casts absolutely no doubt on the validity of the robbery conviction. Under such circumstances, it is not impossible to say upon which count, if either, a properly instructed jury would have convicted the defendant. It may be concluded with satisfacto-

ry certainty that the jury, having convicted for both offenses, would have convicted of robbery if it had been properly instructed. The verdict on the robbery count shows that the jury found each element of that offense to have been established beyond a reasonable doubt. That the jury went on to find that the defendant also possessed the proceeds of the robbery—whether on a different date and on different proof or not—casts no doubt on the trustworthiness of the findings on the robbery count.

*Gaddis*, 424 U.S. at 551–52, 96 S.Ct. at 1028 (White, J., concurring). White did not attempt to reconcile his conclusion with the Court's contrary holding in *Milanovich*. It is apparent from White's reference to the refined instructions adopted by the *Gaddis* majority, however, that he considered the Court's holding in *Milanovich* to have been nullified by that portion of the *Gaddis* majority's opinion. *See id.* at 552, 96 S.Ct. at 1028.

Every appellate court decision since *Gaddis* has similarly concluded that a new trial is not required where the defendant is convicted for both theft and possession and both counts were properly submitted to the jury. *See United States v. Garber*, 626 F.2d 1144, 1153 (3d Cir.1980), *cert. denied*, 449 U.S. 1079, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981); *United States v. Moore*, 616 F.2d 1030, 1032–34 (7th Cir.), *cert. denied*, 446 U.S. 987, 100 S.Ct. 2972, 64 L.Ed.2d 844 (1980); *United States v. DiGeronimo*, 598 F.2d 746, 752–53 (2d Cir.), *cert. denied*, 444 U.S. 886, 100 S.Ct. 180, 62 L.Ed.2d 117 (1979); *United States v. Crawford*, 576 F.2d 794, 800–01 (9th Cir.), *cert. denied*, 439 U.S. 851, 99 S.Ct. 157, 58 L.Ed.2d 155 (1978); *United States v. Gilbert*, 553 F.2d 990, 990 (5th Cir.1977), *cert. denied*, 439 U.S. 913, 99 S.Ct. 284, 58 L.Ed.2d 259 (1978); *United States v. Lindsay*, 552 F.2d 263, 265–66 & n. 3 (8th Cir.1977); *Proffitt v. United States*, 549 F.2d 910, 912 (4th Cir. 1976), *cert. denied*, 429 U.S. 1076, 97 S.Ct. 818, 50 L.Ed.2d 795 (1977); *United States v. Sellers*, 547 F.2d 785, 786 (4th Cir.1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977); *United States v. Solimine*, 536 F.2d 703, 710–11 (6th Cir.), *vacated on other grounds*, 429 U.S. 990, 97 S.Ct. 517, 50 L.Ed.2d 603 (1976). The majority of

these cases appear to rely, as we do in the instant case, on the refined instructions for multiplicitous counts adopted by the majority in *Gaddis*. In *DiGeronimo*, for example, the court held that a new trial was unnecessary "[s]ince a properly instructed jury would have stopped with the former finding [that the defendant participated in the robbery]" and therefore " '[i]t may be concluded with satisfactory certainty that the jury ... would have convicted of robbery ... if it had been properly instructed.' " 598 F.2d at 753 (quoting *Gaddis*, 424 U.S. at 551, 96 S.Ct. at 1028 (White, J., concurring)); *see also Garber*, 626 F.2d at 1153; *Crawford*, 576 F.2d at 800–01; *Proffitt*, 549 F.2d at 912; *Sellers*, 547 F.2d at 786.

We recognize that in two of our earlier cases we remanded for a new trial when a defendant had been convicted of both theft and possession of stolen property. *See Jenkins*, 361 F.2d at 617–18; *Glass*, 351 F.2d at 681. However, both of these cases were decided prior to the Supreme Court's decision in *Gaddis*. Furthermore, neither of these cases held that it would be inappropriate simply to vacate the conviction for possession, nor did they analyze the potential remedies that might be available to the appellate court. Rather, they merely adopted the same remedy ordered in *Milanovich*. Given our conclusion that *Milanovich* has been undermined by *Gaddis*, we believe *Jenkins* and *Glass* should not be read to preclude our holding in the instant case that a proper remedy for the district court's erroneous instructions is simply to vacate the defendant's conviction for possession.[3]

## II. *The Sufficiency of the Evidence*

■ The defendant's second claim is that the evidence supporting his conviction for conspiracy was insufficient. We review the ultimate legal issue of the sufficiency of the evidence de novo. *Case v. Mondragon*, 887 F.2d 1388, 1393 (10th Cir.1989), *cert. denied*, 494 U.S. 1035, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990).

■ The evidence supporting a conviction is insufficient if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Thurston*, 771 F.2d 449, 452 (10th Cir.1985). When making this determination, "we are not permitted to weigh conflicting evidence or consider witness credibility." *United States v. Davis*, 965 F.2d 804, 811 (10th Cir.1992), *cert. denied*, ── U.S. ──, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993). Rather, we must view the evidence, "both direct and circumstantial, together with the reasonable inferences to be drawn therefrom ... in the light most favorable to the government." *United States v. Hager*, 969 F.2d 883, 887 (10th Cir.), *cert. denied*, ── U.S. ──, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992).

■ To prove a conspiracy under 18 U.S.C. § 371, the government must show 1) that two or more persons agreed to violate the law, 2) that the defendant knew at least the essential objectives of the conspiracy, 3) that the defendant knowingly and voluntarily became part of it, and 4) that the alleged coconspirators were interdependent. *United States v. Evans*, 970 F.2d 663, 668 (10th Cir.1992), *cert. denied*, ── U.S. ──, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993). In the instant case, the defendant argues that the prosecution failed to prove either that he was a party to any agreement to violate 18 U.S.C. § 659, or that he participated in any such agreement willfully.

■ An agreement exists among the parties to a conspiracy when there is "a meeting of the minds in the common design, purpose, or objects of the conspiracy." *United States v. Zang*, 703 F.2d 1186, 1191 (10th Cir.1982), *cert. denied*, 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983) (citations omitted). This meeting of the minds is often not susceptible of direct proof and may be established by circumstantial evidence consisting of the

---

**3.** Because of the possibility that this opinion could be viewed as inconsistent with *Jenkins v. United States* and *Glass v. United States*, and because one panel cannot, of course, overturn precedent established by a prior panel, we have requested a vote of all active judges on the Tenth Circuit as to our interpretation of *Jenkins* and *Glass*. All the active judges have approved the interpretation offered in the text as to those two cases.

statements and acts of the parties. *See id.;* *United States v. McMahon,* 562 F.2d 1192, 1196 (10th Cir.1977) (citation omitted).

 Here, the prosecution presented sufficient evidence from which the jury could infer that the defendant was party to an agreement to steal the liquor from Jackson's truck. Although the defendant did not personally negotiate the deal with Jackson, he helped unload the liquor from Jackson's truck. Furthermore, he personally informed Cockerhan of the deal when Cockerhan objected to the amount of liquor being unloaded onto his property. Finally, the defendant arranged to have the liquor removed from Cockerhan's property after Cockerhan objected to its continued storage on his property. Viewing this evidence in the light most favorable to the government, we conclude that a rational jury could have found beyond a reasonable doubt that there was a sufficient meeting of the minds between the defendant and his companions to establish that the defendant conspired in violation of § 371.

The Fifth Circuit's decision in *United States v. Franklin,* 586 F.2d 560 (5th Cir. 1978), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1536, 59 L.Ed.2d 789 (1979), does not require a different conclusion. In *Franklin,* the court held that the evidence was insufficient to support the jury's conclusion that one of the defendants was party to an agreement to steal art prints where the evidence showed only that the defendant was present at a warehouse where the prints were being stored and helped load the prints, which were heavily wrapped, into the trunk of another defendant's car. *See id.* at 571–72. We find *Franklin* to be factually distinguishable. Here, the defendant was at the crime scene, was aware that the theft was occurring, and actually assisted in perpetrating the theft. In contrast to *Franklin,* therefore, the nexus between the defendant and the illicit scheme in the instant case was sufficiently close so as to justify the jury's conclusion that the defendant was party to an agreement to steal the liquor from Jackson's truck.

 The defendant's claim that the evidence was insufficient to support the jury's conclusion that he acted willfully is equally without merit. A defendant acts willfully if he is aware of the illicit nature of his conduct. *See United States v. Sherman,* 576 F.2d 292, 297 (10th Cir.), *cert. denied,* 439 U.S. 913, 99 S.Ct. 284, 58 L.Ed.2d 259 (1978). Like the existence of an agreement, the element of willfulness "is rarely provable by direct evidence, and most often can be proven only by inference from the evidence introduced." *Id.* (citations omitted).

In the instant case, there was extensive evidence from which the jury could reasonably have inferred that the appellant was aware of the illicit nature of his conduct. First, the defendant arranged to have the liquor unloaded at Cockerhan's residence after Jackson expressed his concern about consummating the deal in a residential area. Second, when the appellant spoke to Cockerhan's wife about removing the liquor from Cockerhan's residence, he refrained from specifically mentioning the liquor and instead referred to the liquor surreptitiously as "it." Third, when the appellant brought some of the stolen liquor to his girlfriend's house, he told her not to ask where the liquor came from and that he got it cheap. Finally, when the appellant was questioned by the FBI, he admittedly lied and stated that he had not been at Cockerhan's residence when the liquor was unloaded from Jackson's truck. When the evidence is viewed in the light most favorable to the prosecution, therefore, we conclude that a rational jury could have found beyond a reasonable doubt that the appellant willfully participated in a conspiracy in violation of § 371.

## CONCLUSION

For the foregoing reasons, we AFFIRM the defendant's convictions for theft and conspiracy and remand to the district court with directions to VACATE the defendant's conviction for possession.