UNITED STATES of America, Appellee,

v.

Jerry Michael SOLIMINE, Appellant in No. 75–1867.

Appeal of Samuel A. SCLAFANI, in No. 75–2134.

Appeal of Julio Joseph PISCOPO, in No. 75–2369.

Nos. 75–1867, 75–2134 and 75–2369.

United States Court of Appeals, Sixth Circuit.

No. 75–1867 Submitted March 29, 1976.

Nos. 75–2134 and 75–2369 Argued March 29, 1976.

Decided June 18, 1976.

Henry E. Sheldon, Cincinnati, Ohio, for appellant in No. 75–1867.

Mary Lee Garfield, Washington, D. C., for appellant in No. 75–2134.

Peter W. Swenty, Cincinnati, Ohio, for appellant in No. 75–2369.

William W. Milligan, U. S. Atty., Anthony W. Nyktas, Cincinnati, Ohio, for appellee.

Before PHILLIPS, WEICK and ADAMS,* Circuit Judges.

ADAMS, Circuit Judge.

These appeals follow convictions in connection with the hijacking of a truckload of clothing. A variety of contentions are advanced by the defendants; the most significant concerns the question whether one may be convicted of both a theft and the possession of the goods stolen in the theft.

I.

The actual hijacking was done on August 8, 1973 by William Skirvin, a driver for Roadway Express. Disguised with a false beard, Skirvin stole a tractor-trailer containing Levi Strauss products from the terminal of his employer in Cincinnati, Ohio. Skirvin took the rig in collaboration with and under the influence of Jerry Solimine, a used car dealer to whom he was in debt. He also cooperated with Samuel Sclafani, who was to arrange for the "fencing" of the goods in Detroit, and Irving Sisson, an associate of Sclafani and Solimine.

Skirvin drove the tractor trailer to the Young Movers Warehouse in Cincinnati where Solimine and a friend, Richard Burress, had made storage arrangements. There Skirvin, Sclafani, Sisson, Burress, and Solimine unloaded 641 cartons from a truck. Melvin Sims, an employee at Solimine's used car lot, and Terry Saylor, the Manager of the warehouse, assisted them.

The following day, August 9, Saylor heard a radio newscast about the hijacking of a Roadway Express truck. He called his brother, the owner of the warehouse, who put Saylor in touch with the FBI. On August 11, FBI agent William Weatherwax came to the warehouse and inspected the

cartons, which were stored in an open area. At that time, only 596 cartons remained in the warehouse, since on the previous day Sclafani, with Sisson and Julio Piscopo, had loaded 45 of the cartons into a camper vehicle and driven them away.

FBI agents placed the warehouse under surveillance. Sclafani, Sims, and Robert Boulier were arrested on August 17 when they came to the warehouse with a rented truck and began to load it with the stolen merchandise.

Skirvin was subsequently arrested, but his cooperation with the government resulted in an arrangement that permitted him to plead guilty to a misdemeanor offense. Solimine, Sclafani, Sisson, Burress, Sims, Boulier, and Piscopo were subsequently indicted for various counts of conspiracy, theft, and receipt and possession of goods stolen from an interstate shipment. The trial of all but Sisson, who appears to have eluded arrest, was held from March 3 to March 7, 1975. The jury convicted all of the defendants except Sims, whose motion for acquittal had been granted by the court. Three of the defendants—Sclafani, Solimine and Piscopo—now bring appeals.

Sclafani and Solimine were found guilty of conspiracy, theft from interstate shipment, and receipt and possession of goods stolen from interstate shipment. They each received sentences of five years for conspiracy, ten years for theft, and ten years for receipt and possession of stolen goods. All sentences were to be served concurrently.

Piscopo, who was found not guilty with respect to the conspiracy charge, was convicted of receipt and possession of stolen goods. He was given a one-year sentence, which was suspended, and placed on probation for two years.

II.

■ Only one contention is raised by Piscopo on this appeal: that there was insufficient evidence to prove his guilt of receipt

* The Honorable Arlin M. Adams, Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

and possession of stolen property in violation of 18 U.S.C. § 659.

All of the evidence against Piscopo was provided by the direct examination of Terry Saylor, the manager of the warehouse. Saylor testified that on August 10, 1975, two days after the hijacking, Piscopo assisted Sclafani and Sisson in loading about 45 cartons of stolen goods into a camper vehicle that bore Michigan license plates. He also stated that Piscopo was present when Sclafani asked him whether campers and rented trucks, such as the one that was to be employed on August 17, had to stop at weigh-stations. In Ohio weigh-stations are operated by the state police. Finally, Saylor described how Piscopo drove off in the camper with Sisson.

Piscopo claims that the government demonstrated only that he was at the scene, but failed to prove either possession or guilty knowledge on his part. We cannot agree.

The evidence against Piscopo is indicative of far more than mere presence at a time when stolen goods were possessed by another. It shows active participation in loading and carrying away stolen property. This participation might seem even more incriminating to the jury when, in the context of a scheme to fence the stolen goods in Michigan, it is recalled that the goods were transported from the Ohio warehouse in a vehicle with a Michigan license.

In *United States v. Nalley*,[1] the convictions rested on the presence of the defendants under suspicious circumstances at the site where a hijacked truck was hidden. Here, Piscopo not only approached the stolen goods, but also helped to load them into a vehicle and then drove off in that vehicle accompanied by one of the prime movers of the criminal scheme. Piscopo's possession was, consequently, more than "passing control."

Under such suspicious circumstances as appear here, it is permissible for the jury to infer from the possession of stolen goods the knowledge that the goods were stolen.[2] Not long ago the Supreme Court upheld a presumption of guilt on the basis of the "unexplained possession of recently stolen property."[3] In this respect, the evidence against Piscopo is much like that in *United States v. Spatuzza*,[4] where the Seventh Circuit upheld a conviction for receipt and possession of stolen goods largely on the basis of participation in the loading of such goods into the van that carried them away.

Accordingly, the conviction of Piscopo will be affirmed.

### III.

Except in one instance, the arguments advanced by Sclafani and Solimine may each be disposed of without extended discussion.

#### A. Pretrial Delay.

Sclafani argues that the lapse of eleven months between his arrest and the return of the indictment, in combination with the seven and one-half months that intervened between the return of the indictment and the trial, was inherently prejudicial and constituted grounds for dismissal of the indictment.

This claim cannot survive the test of *Barker v. Wingo*.[5] There the Supreme Court held that delay in itself was not a sufficient ground for finding a violation of the right to a speedy trial.[6] Significant delay, however, does serve to trigger an *ad hoc* balancing of the relevant factors.

In the present case there is no indication that the time lag was for an improper purpose. Nor did Sclafani assert his right to a speedy trial prior to this appeal. In fact,

---

1. 455 F.2d 259 (6th Cir. 1972).

2. *United States v. Prujansky*, 415 F.2d 1045, 1050 (6th Cir. 1969).

3. *Barnes v. United States*, 412 U.S. 837, 841–46, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

4. 331 F.2d 214, 216 (7th Cir. 1964), *cert. denied*, 379 U.S. 829, 85 S.Ct. 58, 13 L.Ed.2d 38 (1964).

5. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

6. *Id.* at 533, 92 S.Ct. 2182.

Sclafani actually sought a continuance when the case was scheduled for trial. Further, Sclafani has utterly failed to meet his burden with respect to the most critical element of the analysis—the showing of prejudice.[7]

### B. Access to the Grand Jury Minutes.

Access to the transcript of the proceedings before the grand jury was sought by Sclafani in order to discover impeachment material that might be used against the government's witnesses. The trial court denied Sclafani's motion for production of this material. Indeed, the court could not satisfy Sclafani since the interrogation that had been preserved was that of codefendant Solimine, who invoked the fifth amendment to avoid giving testimony that might incriminate him. The transcript containing the questions put to Solimine was, in fact, delivered to counsel for Sclafani.

The Court could not grant access to non-existent records, and it is not required that testimony before the grand jury be recorded.[8] Thus, no legally cognizable harm could flow to Sclafani from the failure to produce the non-existent grand jury minutes. We repeat, however, the prior observation by this Court that it would be better practice to make and preserve a record of grand jury testimony.[9]

Sclafani's collateral claim that his indictment was faulty because it was based on hearsay testimony related to the grand jury by agent Bruce Stepp, rather than on direct testimony from witnesses that the government ultimately employed at trial, is not supported by authority. The Supreme Court has held that indictments may be

founded on hearsay.[10] In addition, we note that Stepp supervised and participated in the surveillance at the warehouse and in the arrests of August 17, and much of his testimony consisted of first-hand information rather than hearsay.

### C. Warrantless Search.

Solimine and Sclafani both charge that their fourth amendment right to be secure against unreasonable searches was violated by the FBI's inspection of the warehouse where the stolen goods were stored. They contend that the FBI's examination of the cartons, which was done without a warrant, was not justified by exigent circumstances. In addition, the stolen cartons were not in "plain view" within the warehouse, according to these defendants, because the cartons were alone on a separate floor.

We find no merit in these contentions. At the behest of Saylor, special agent Weatherwax visited the Young Movers warehouse on August 11. Saylor took Weatherwax to the floor where the cartons from the Roadway Express trailer were stored. The cartons were not shut-off by partitions and locked doors, the floor itself was not sealed, and Saylor's access was not at all limited. Weatherwax examined the cartons but did not open any of them.

It is apparent that the inspection by Weatherwax was conducted with the consent of a person who had complete custody and authority over the premises. In fact, the search was at the unsolicited invitation of Saylor. Such a search is not prohibited by the fourth amendment and does not require a warrant.[11] A party who permits

---

7. *Trigg v. State of Tennessee,* 507 F.2d 949 (6th Cir. 1974), *cert. denied,* 420 U.S. 938, 95 S.Ct. 1148, 43 L.Ed.2d 414 (1975).

8. *United States v. Battisti,* 486 F.2d 961, 963 (6th Cir. 1973); *United States v. Allen,* 522 F.2d 1229 (6th Cir. 1975), *cert. denied,* 423 U.S.1072, 96 S.Ct. 854, 47 L.Ed.2d 82, 44 U.S.L.W. 3412 (1976).

9. 486 F.2d at 963. We note that the Court of Appeals for the Third Circuit requires that the testimony of all witnesses before a grand jury be recorded, if the testimony of any witness is

to be recorded. This rule is intended to give the government and the defendant an equal opportunity to impeach unfavorable witnesses. *See United States v. Crutchley,* 502 F.2d 1195, 1200 (1974).

10. *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

11. *United States v. Matlock,* 415 U.S. 164, 169–72, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

his goods to remain in an open area of a warehouse, accessible to the operator of the warehouse and any person admitted by the operator, cannot be said to have an expectation of privacy with respect to those goods. Such party must assume the risk that his warehouseman may consent to a search of the premises, and that the goods may thereby be subjected to exposure.[12]

D. Evidence of the Value of the Stolen Articles.

■ Proof that the stolen merchandise was worth more than $100, the amount necessary to constitute a felony under section 659, is also challenged by Sclafani. His contention is that the prosecution failed to submit *expert* testimony regarding the fair market value of the stolen products. The argument thus rests on a fundamental misconception of the necessary proof. Although the evidence must be competent, the government's proof of value need not be based on an appraisal by an expert.

Here, the traffic manager of Levi Strauss testified about the size of the shipment and the total invoice price, which was $95,-881.77. He also testified about the invoice price of 14 individual cartons of clothing, all of which were admitted into evidence, together with the appropriate bills of lading and invoices. No carton had contents worth less than $100. If the invoice price, which was amply proven, was more than $95,000, the jurors could have rationally concluded that the retail price would be even greater.[13]

■ In addition, there was testimony that the conspirators expected to obtain about $90,000 for the stolen goods on the thieves' market. Such circumstantial evidence is admissible to prove the value of stolen goods.[14]

Thus, there was ample evidence from which the jury could infer, without resort to speculation, that the value of the stolen articles was greater than $100.

E. Prejudicial Testimony.

■ On direct examination in his own behalf, codefendant Burress testified that he had been coerced by threats made against his family by the absent codefendant, Sisson. No explanation of this testimony was sought by any of the defendants on cross-examination. Nor was there any objection or subsequent request for instructions to the jury to mitigate the prejudicial impact of this arguably irrelevant testimony.

In the absence of an objection or a request for instruction by the defendants, we find no reversible error in the admission of this testimony.[15]

Sclafani urges, however, that the testimony was not only irrelevant and prejudicial, but that it was also false. This assertion was raised in a post-trial motion for acquittal, accompanied by an affidavit by an attorney for one of the defendants. The affidavit stated that the attorney had overheard a comment by Burress on the day the testimony was given that suggested that his testimony had been fabricated.

■ The question raised is one that would appear more appropriate to a motion for a new trial under Rule 33, than to a motion for acquittal under Rule 29, since it involves an element of unfairness intro-

**12.** *United States v. Novello,* 519 F.2d 1078 (5th Cir. 1975); *United States v. Piet,* 498 F.2d 178 (7th Cir. 1974), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 664 (1974).

**13.** Although 18 U.S.C. § 659 does not establish a standard for determining the requisite value of the stolen property, some courts have adopted the standard of § 641: "face, par, or market value, or cost price, either wholesale or retail, whichever is greater." *See United States v. Payne,* 467 F.2d 828, 830 n. 5 (5th Cir. 1972), *cert. denied,* 410 U.S. 912, 93 S.Ct. 975, 35 L.Ed.2d 275 (1973); *Torres v. United States,* 270 F.2d 252, 256 (9th Cir. 1959), *cert. denied,* 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed.2d 741 (1960). Under whatever standard might be employed, including fair market value, the government has met its burden here.

**14.** *United States v. Tyler,* 474 F.2d 1079, 1080 (5th Cir. 1973).

**15.** *See Fallen v. United States,* 343 F.2d 844, 846 (5th Cir. 1965).

duced into the trial by a codefendant rather than the sufficiency of the government's case. Indeed, in his brief Sclafani himself refers to the motion as a "motion to vacate" the judgment.

However, even reading the affidavit in the light most favorable to the defendants, and assuming that Burress' testimony was false, there is no basis for granting a new trial. Evidence that discredits a witness, but does not directly contradict the government's case, is not a ground for granting a new trial.[16] To destroy confidence in Burress' testimony would not undercut in any way the government's evidence in this prosecution.

### F. Skirvin's Plea Bargain.

Skirvin, the Roadway Express driver, was a key witness for the government. Sclafani and Solimine sought dismissal because, they claim, the nature of Skirvin's plea bargain was not completely revealed to the jury. In particular, they charge that the jurors were not adequately informed regarding Skirvin's sentencing and about the original felony charge that remained outstanding against him.

Had the jurors been misled about the nature of the plea bargain they might, arguably, have been unable to determine the veracity of the witness, thereby prejudicing the defendants.[17] In this case, however, the jurors were accurately informed that Skirvin had not yet been sentenced and that the government had made no promises to him with respect to sentencing. In addition, the district court ruled that as a matter of law Skirvin's plea to the misdemeanor charge had terminated the felony charge in question. Thus, the jurors were correctly advised and in a position to weigh the credibility of Skirvin's testimony.[18]

### IV.

Finally, Sclafani contends that he was improperly convicted of both theft from an interstate shipment and possession of goods stolen from an interstate shipment, since the goods at issue in the possession count are the same goods that were the subject of the theft count. Because the instructions to the jury were inaccurate in this respect, Sclafani argues, his convictions on these counts, and the associated conspiracy count, must be reversed.

We agree that, on the basis of the facts in this case, Sclafani cannot be convicted of both the theft and possession of the same goods. However, this conclusion does not require the reversal of *all* of Sclafani's convictions.

### A. The Consequences of *Prince* and *Milanovich*.

The Supreme Court in *Prince v. United States*[19] held that a bank robber cannot be convicted of both robbery and entry of a bank with intent to commit a robbery, if the robbery is consummated. The unlawful entry is to be considered a lesser included offense that merges into the completed crime. Entry itself, the Court stated, was made illegal in 18 U.S.C. § 2113 in order to reach culprits who fall short of their purpose, not to fragment the crime for the sake of punishment.

In *Heflin v. United States*[20] the Court also applied a functional analysis of the statutory purpose. Convictions for separate counts of bank robbery and receipt and possession of stolen funds were reversed in *Heflin* since the robbers were accused of

---

**16.** *United States v. Sposato*, 446 F.2d 779, 781–82 (2d Cir. 1971); *United States v. Rodriguez*, 437 F.2d 940 (5th Cir. 1971).

**17.** *See, e. g., Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

**18.** *United States v. Fontenot*, 483 F.2d 315, 325–26 (5th Cir. 1973); *United States ex rel. Romeo v. McMann*, 418 F.2d 860 (2d Cir. 1969),

*cert. denied*, 398 U.S. 913, 90 S.Ct. 1715, 26 L.Ed.2d 77 (1970).

**19.** 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957).

**20.** 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959).

receipt and possession of the very funds which they had taken in the robbery. As the Court recently reiterated in *United States v. Gaddis*,[21] the purpose of the possession subsection, like that of the illegal entry provision, is to reach a "different 'group of wrongdoers,' i. e., 'those who receive the loot from the robber.'" It is not the intent of Congress to "pyramid" the punishment of the bank robbers themselves by the multiplication of their offenses.[22]

Similarly, in *Milanovich v. United States*,[23] the provisions of 18 U.S.C. § 641, which pertain to stealing government property, have been held not to support convictions for both theft and receiving and concealing the same property. Indeed, the decision in *Milanovich* may be regarded as a generous application of the principles of *Prince* and *Heflin*, since there had been a substantial hiatus between Mrs. Milanovich's participation in the theft, which was completed after she abandoned her accomplices, and her receipt of the stolen money.

According to the Supreme Court, *Prince, Heflin*, and *Milanovich* were predicated on statutory construction, not common law distinctions.[24] Consequently, the government urges that the reasoning of those cases, which dealt with sections 2113 and 641, cannot be employed with respect to convictions under section 659. The original enactments of both section 2113 and section 641 were subsequently amended to encompass the entry or possession offenses. The Court in each case referred to the absence of legislative history to indicate that the amendments were passed in order to subdivide the crimes and increase the penalties. The theft and possession provisions of section 659, however, were enacted simultaneously. Therefore, the government asserts, the reasoning which forbids multiple indictments in the case of bank robbery or theft of government property cannot apply

to theft from interstate shipment. The government's argument is not convincing.

The functional approach to statutory interpretation which the Supreme Court has applied with respect to sections 2113 and 641, applies equally to section 659. There is no indication in the sparse legislative history of section 659 that Congress intended to regard each theft from interstate shipment as a multiplicity of discrete offenses so that the punishment for such theft could be enhanced. On the contrary, section 659 demonstrates Congress' capacity to create multiple offenses, subject to multiple penalties, when it thinks such measures necessary. In Section 659, Congress has explicitly commanded that "[t]he carrying or transporting of any such . . . goods, . . . in interstate or foreign commerce, knowing the same to have been stolen, shall constitute a separate offense and subject the offender to the penalties under this section for unlawful taking . . . ."

Without evidence of an intent to effect a similar accumulation of penalties with respect to possession of stolen goods, the line of cases concluding with *Gaddis* would seem to require that the statute be understood as an attempt to bring within the scope of the criminal law each class of wrongdoers that contributes to the acts which Congress sought to punish and deter. As the Supreme Court has observed, if Congress had intended to impose a harsher penalty, "the result could have been accomplished easily with certainty rather than by indirection."[25]

When the intent of Congress in punishing multiple aspects of the same act is ambiguous, it is the practice of the courts to "resolve an ambiguity in favor of lenity."[26] There is a judicial "policy of not attributing to Congress, in the enactment of criminal statutes, an intention to punish more severely than the language of its laws clearly

---

21. 424 U.S. 544, 96 S.Ct. 1023, 1026, 47 L.Ed.2d 222, 44 U.S.L.W. 4293 (1976).

22. *See Heflin*, 358 U.S. at 420, 79 S.Ct. 451.

23. 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961).

24. *Id.* at 554, 81 S.Ct. 728.

25. *Prince*, 352 U.S. at 328, 77 S.Ct. at 407.

26. *Heflin*, 358 U.S. at 419, 79 S.Ct. at 453.

imports in the light of pertinent legislative history." [27]

In view of the Supreme Court's recent reaffirmance in *United States v. Gaddis* of this functional approach, we believe that the trend of decisions requires a departure from this Court's prior position, which permitted conviction for both theft and possession even though the possession stemmed from the same act as the theft.[28]

Accordingly, we hold that it was improper, under the facts here, to convict Sclafani of both theft from interstate shipment and receipt and possession of that very same property.

## B. Relief.

Sclafani urges that if he may not be convicted of both the theft and possession of the same stolen merchandise, his convictions on *both* counts must be reversed. At a new trial, he urges, the jury should be instructed that the two crimes bear a disjunctive relationship to each other, and that a party such as Sclafani may be convicted of only one crime or the other, but not both. This case does not call for such relief, however.

In *United States v. Gaddis*, the Supreme Court held that where there is insufficient evidence to convict the robber of possession, because the possession offense applies to those who have received the proceeds "from the robber" and not to the robber himself, the trial court should dismiss the possession count against the robber. The failure of the trial court to dismiss the charge can be

fully corrected on appeal by "the simple expedient of vacating the convictions and sentences under that count." [29] It is not necessary, the Supreme Court said, to reverse all convictions and to remand for a new trial.

The same reasoning is applicable to Sclafani's convictions. We have held that the receipt and possession provision of section 659 is not directed to the thief, but to those who receive the stolen goods from the thief. Since the receipt and possession paragraph cannot apply to Sclafani, who was one of the thieves, the receipt and possession count against him should have been dismissed. Failing dismissal at the trial, the proper remedy is for the appellate court to vacate the conviction and sentence with respect to that count alone.[30]

There remains one related contention. Sclafani argues that since he could not be convicted of both stealing and possessing the same goods, at least under the facts here, he ought not to have been convicted under the conspiracy count that charged the seven defendants with conspiracy (1) to steal, and (2) to receive and possess.

This proposition, however, overlooks the fact that a single conspiracy may have as its object a variety of different crimes.[31] The unlawful agreement itself is the essence of the conspiracy. Here the various parties conspired to obtain, one way or another, a truckload of clothing. Some of the parties stole the goods; some of the parties entered the conspiracy later and re-

27. 352 U.S. at 329, 77 S.Ct. at 407.

28. *See United States v. Jackson*, 422 F.2d 975, 978 (6th Cir. 1970); *Carroll v. United States*, 174 F.2d 412, 413–15 (6th Cir. 1949), *cert. denied*, 338 U.S. 874, 70 S.Ct. 136, 94 L.Ed. 536 (1949).

29. 424 U.S. at 549, 96 S.Ct. at 1027, 44 U.S.L.W. at 4294.

30. In some instances, where the proof of theft may be dubious relative to the proof of possession, both theft and possession of the same goods may be charged. In such cases, a jury might reasonably find the defendant not guilty of theft, but guilty of possession. The dismiss-

al of the possession count would, therefore, be inappropriate. Improper cumulation of convictions can be avoided, however, by instructing the jury that it may convict of either theft or possession, but not of both. *See Gaddis*, 424 U.S. at 549, 96 S.Ct. at 1026, 44 U.S.L.W. at 4294.

31. *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); *United States v. Mayes*, 512 F.2d 637 (6th Cir. 1975), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975); *United States v. Goble*, 512 F.2d 458 (6th Cir. 1975), *cert. denied*, 423 U.S. 914, 96 S.Ct. 221, 46 L.Ed.2d 143 (1975).

ceived the goods from the thieves. The indictment accurately described the crimes encompassed by the scheme, and Sclafani was properly convicted for his participation in the conspiracy which was necessary for the ultimate disposition of the stolen property.

Therefore, we vacate the judgment with respect to the conviction and sentence of Sclafani for receipt and possession of goods stolen from an interstate shipment. In all other respects, the judgment of the district court is affirmed.