**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Peter A. MAKRES, Defendant-Appellant.**

**No. 78–1396.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 20, 1979.

Decided May 8, 1979.

Rehearing Denied June 8, 1979.

---

Robert S. Bailey, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Julian Solotorovsky, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SPRECHER, TONE· and WOOD, Circuit Judges.

TONE, Circuit Judge.

The issues in this case are (1) whether the trial judge abused his discretion in dismissing a juror for tardiness, and (2) whether the defendant may be convicted and cumulatively punished for both (a) possessing stolen mail and (b) uttering United States Treasury checks containing forged endorsements, when the stolen mail possessed consists of the Treasury checks. We answer both questions in favor of the prosecution and affirm.

A six count indictment was returned against defendant Makres charging him in three counts with possession of stolen mail on three specified dates, in violation of 18 U.S.C. § 1708, and in three additional counts with uttering United States Treasury checks containing forged endorsements with the intent to defraud the United States on the same three dates, in violation of 18 U.S.C. § 495. At trial evidence of the three deposits was offered to prove both possession and uttering.

Viewed in the light most favorable to the jury's verdict, the evidence showed the following facts: Makres opened an account under the name of Consolidated Investment Development II at the Harris Bank and Trust Company of Chicago on May 26, 1976. During May, June, and July of that year he deposited approximately $54,000 into the account and withdrew the entire amount in cash, closing the account in August 1976. On June 7, 15, and 17, 1976, Makres deposited United States Treasury checks payable to persons other than himself into the account. These checks had been placed in the mail but had never been received by the addressee-payees; nor had any of the latter authorized Makres to possess the checks. Each check bore the forged signature of the payee. Makres' fingerprints were found on at least two of the checks.

The jury found Makres guilty under all six counts. The court sentenced him to incarceration for fifteen years: five years on each of the three possession counts, the sentences to run concurrently, and ten years on each of the uttering counts, the sentences to run concurrently with each other but consecutive to the sentences on the possession counts.

I.

Makres contends that the district court committed reversible error in discharging a juror who was late on the second day of the trial. Before trial, the parties stipulated in writing as follows:

After trial herein has commenced, a maximum of (not more than) two jurors may, if required, be excused from the full pan-

el of twelve by reason of illness or other good cause as determined by this Court. At the conclusion of the first day of trial, the judge told the jury that the trial would resume at 1:00 p. m. the following day and admonished them to be on time. All the jurors except one arrived by the appointed hour. The judge waited until 1:25 p. m. and then decided to discharge the late juror and proceed with the remaining eleven. Before doing so, however, the judge attempted to communicate with the juror by telephone at her home and at her place of employment. The home telephone had been disconnected, and the employer stated that it was the juror's day off. There was of course no way for the judge to know when, if ever, the missing juror would appear. As it turned out, she arrived about ten minutes after the trial had resumed.

Counsel for Makres objected to proceeding without the juror, arguing that the court should wait until the juror was one hour late. When the court overruled the objection, a motion for mistrial was made and denied.

Defendant relies principally upon the first opinion in *United States v. Rodriguez,* 564 F.2d 1189 (5th Cir. 1977), which held that the trial judge had erred in discharging a juror for tardiness and proceeding without the juror. On rehearing, the court in *Rodriguez* reversed itself and affirmed the conviction. *United States v. Rodriguez,* 573 F.2d 330 (5th Cir. 1978). In so doing, the court followed *United States v. Domenech,* 476 F.2d 1229 (2d Cir.), *cert. denied,* 414 U.S. 840, 94 S.Ct. 95, 38 L.Ed.2d 77 (1973), which held that the trial judge had not abused his discretion in discharging a juror who was only ten minutes late on the day the court was to instruct the jury and who had appeared shortly after the trial had resumed without her.

We agree with these decisions of other circuits and find no abuse of discretion here. Judge Kirkland did not act precipitously, but made an effort to determine whether the juror was en route. From the information received, the judge could not determine whether the juror would appear at all.

How long to wait under these circumstances was for the judge's discretion. His decision was well within reason.

## II.

Makres next contends that the district court erred in imposing consecutive sentences for violations of §§ 1708 and 495. His contention raises two questions: first, whether Congress intended that the crimes should be prosecuted and punished cumulatively; and, second, if so, whether the double jeopardy clause of the Fifth Amendment is violated by the cumulative punishment. *Simpson v. United States,* 435 U.S. 6, 11, 98 S.Ct. 909, 55 L.Ed.2d 70 (1977). The answer to the second question depends upon "whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Although double jeopardy was not mentioned in the *Blockburger* opinion, it is now recognized that if the test there established is not met, the double jeopardy clause prohibits cumulative punishment. *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Because applying the *Blockburger* test amounts to deciding a constitutional question, it is appropriate to decide the question of statutory construction first. *See Simpson v. United States,* 435 U.S. at 11–12, 98 S.Ct. 909.

### A.

The cases to which we look for guidance on the statutory interpretation issue begin with *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), which held that a bank robber could not be punished cumulatively for two offenses defined in 18 U.S.C. § 2113(a): entering a bank with intent to commit a felony and robbery. *Heflin v. United States,* 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959), reached the same result with respect to separate charges under subsection (d) of that section for aggravated bank robbery and under subsection (c) for receiving and possessing the proceeds of the robbery. The crimes in *Prince* were arguably greater and lesser

included offenses that "merged" when the greater offense was completed; those in *Heflin* clearly were not, but subsection (c) was considered to have been intended to reach wrongdoers other than the robbers. *United States v. Gaddis,* 424 U.S. 544, 547–548, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976). In both cases the Court found in the legislative history indications that Congress had not intended punishment for both crimes.

Separate provisions of a single section of Title 18 were also involved in *Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961). There the Court held that theft of government property in violation of the first paragraph of 18 U.S.C. § 641 and receiving and concealing some of the same property in violation of the second paragraph of that section could not be cumulatively punished. Although in *Heflin* the Court relied on legislative history indicating that Congress had intended to reach wrongdoers other than the thieves when it added the receiving offense to the statute, 358 U.S. at 419–420, 79 S.Ct. 451, in *Milanovich* it seemed to rely on the absence of history indicating an intent to punish the thief twice,[1] 365 U.S. at 554, 81 S.Ct. 728, 730. In both cases "the provision of the statute which makes receiving an offense came into the law later than the provision relating to robbery." *Id.*[2]

When two crimes are defined in a single section of the code, usually their interrelationship will have been considered by Congress, and therefore the legislative intent is more readily assessed than it is when two separate sections are involved. When both are found in the same section, it is not unreasonable to expect to find in the legislative history some affirmative expression of an intent to punish for both if such an intent exists. *Cf. United States v. Gilbert,* 553 F.2d 990 (5th Cir. 1977) (charges under 18 U.S.C. § 659 for both theft and possession), on remand ordered in *Gilbert v. Unit-* ed States, 430 U.S. 902, 97 S.Ct. 1169, 51 L.Ed.2d 578 (1977), *cert. denied,* 439 U.S. 913, 99 S.Ct. 284, 58 L.Ed.2d 259 (1978); *United States v. Lindsay,* 552 F.2d 263, 266 (8th Cir. 1977) (charges under 18 U.S.C. § 1708 for both theft and possession); *United States v. Solimine,* 536 F.2d 703, 709–711 (6th Cir.) (charges under 18 U.S.C. § 659 for both theft and possession), *cert. granted and judgment vacated in part, Solimine v. United States,* 429 U.S. 990, 97 S.Ct. 517, 50 L.Ed.2d 603 (1976) (vacating judgment as to one defendant and remanding with directions to consider claim that convictions and sentences of that defendant for theft and receiving must be dealt with as were the "similar convictions and sentences" of a codefendant at 536 F.2d at 709–711). *See also United States v. Kalama,* 549 F.2d 594, 597 (9th Cir.), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1147, 51 L.Ed.2d 564 (1977) (charges under 26 U.S.C. § 5861 for both making and possessing a firearm); *United States v. Clements,* 471 F.2d 1253 (9th Cir. 1972) (same). The structure of the statute and the apparent relationship of the provisions may also support the conclusion that cumulative punishment was not intended. *See Jeffers v. United States,* 432 U.S. 137, 156–157, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (plurality opinion); *see also Milanovich v. United States, supra,* 365 U.S. at 554, 81 S.Ct. 728 (later addition of receiving provision).

Neither the legislative history nor the structure and relationship of the statutory provisions are as likely to yield helpful indications of Congressional intent when separate sections are involved. Congress can hardly be expected, each time it considers a proposed criminal statute, to reexamine Title 18 to find other provisions that may under some circumstances be violated by the conduct prohibited in the bill under consideration. If, however, the two sec-

---

1. Thus it was immaterial that the receiving which the government proved occurred two weeks after the asportation, which was not participated in by the defendant. *See Milanovich v. United States,* 275 F.2d 716, 718 (4th Cir. 1960).

2. The provisions involved in this case, §§ 1708 and 495, were also adopted at different times. Section 495 has its origins in 3 Stat. 771, adopted in 1823, but the possession provision of § 1708 was not adopted until 1909, 35 Stat. 1125.

tions "are addressed to the same concern and designed to combat the same problem," *Simpson v. United States, supra,* 435 U.S. at 10, 98 S.Ct. at 911, Congress may consider the relationship of the two provisions and give some indication of whether punishment should be cumulative. *See id.* at 13–14, 98 S.Ct. 909.

When one of two distinct crimes defined in a single section is also proscribed in another and cumulation of punishment under the single section would be impermissible, the prosecution has not been allowed to evade the rule by resort to the other section. *United States v. O'Neil,* 436 F.2d 571 (9th Cir. 1970), involved a prosecutorial attempt to cumulate punishment for the armed robbery of a customs officer. Receiving and retaining was charged under § 641, the section construed in *Milanovich,* and aggravated robbery was charged under § 2114, which has no receiving and retaining provision. An enhanced sentence for the robbery was imposed consecutively with a sentence for receiving and retaining. Relying on *Milanovich*'s prohibition, the Court held that the cumulation under § 641 which *Milanovich* would have prohibited could not be achieved by charging the theft under another section.

*United States v. Seals,* 545 F.2d 26 (7th Cir. 1976), is similar. There this court held that consecutive sentences under 18 U.S.C. § 2114 for robbery of a postman and 18 U.S.C. § 1708 for possession of the stolen mail were impermissible. The latter section, like § 641, which was before the court in *O'Neil,* contains both theft and possession provisions. Its legislative history is silent as to any intent to punish the thief twice and makes no reference to § 2114. *See United States v. Seals, supra,* 545 F.2d at

29. As in *Heflin, Milanovich,* and *Gaddis,* the possession offense had been "created by Congress later than the robbery offense." *Id.* at 28. The government's effort to distinguish those three cases as each having been decided under a single section was met by the Court's reliance on *O'Neil.* The Court believed that, as in *Milanovich,* when Congress adds a possession provision to a theft provision, it is reasonable to expect that if Congress intended to punish the thief twice there be some evidence of that intent, absent which a contrary intent should be inferred. The Court not only quoted Justice Frankfurter's statement in his dissent in *Milanovich* that "[i]t is hornbook law that a thief cannot be charged with committing two offenses—that is, stealing and receiving the goods he has stolen," 365 U.S. at 558, 81 S.Ct. at 732, but also said, in rejecting the government argument that §§ 2114 and 1708 had different purposes,

> We find this distinction too tenuous to override the strong policy manifested by *Heflin* and *Milanovich* not to convict upon two offenses when the robber is found in possession of the same goods he has stolen.

545 F.2d at 29 n.3.[3] The case at bar involves neither that policy nor prosecutorial resort to another section of the code in an effort to accomplish cumulation that would otherwise be impermissible.

In *Simpson v. United States, supra,* the defendant was convicted and sentenced under 18 U.S.C. §§ 2113(d) and 924(c). Under § 2113(a), simple bank robbery is punishable by imprisonment for 20 years; if a dangerous weapon is used in robbing the bank, the maximum prison sentence is increased to 25 years under § 2113(d). The second statute

**3.** *United States v. Crawford,* 576 F.2d 794 (9th Cir.), *cert. denied,* 439 U.S. 851, 99 S.Ct. 157, 58 L.Ed.2d 155 (1978), is in accord. There the court held that the failure to instruct the jury that it could not convict of theft in violation of § 2114 and possession of the same property in violation of 18 U.S.C. § 500, which prohibits both theft and possession, was error, but went on to hold that dismissal of the § 500 count prior to sentencing cured the error. *Id.* at 800-801. The court noted that,

> By enacting § 500 to proscribe the receiving and possession of stolen blank postal money orders, Congress intended to reach the illicit traffic in such money orders. [Citation omitted.] There is no obvious legislative intent to pyramid the penalties of § 500 and § 2114. *Id.* at 800. *But see Brown v. United States,* 458 F.Supp. 182 (S.D.N.Y.1978) (in light of practical considerations, held *Gaddis* and *Heflin* preclude pyramiding of punishments, but not convictions, under §§ 2114 and 500).

involved in *Simpson*, § 924(c), provides that use of a firearm in the commission of a federal felony subjects the offender to a maximum of ten years imprisonment in addition to any punishment imposed for commission of the felony. Relying on the legislative history of § 924(c), the rule that ambiguity in a criminal statute is to be construed in favor of lenity, and the principle that a specific statute is to be given preference over a general one, the Court held that Congress had not intended cumulative punishment under 2113(d) and 924(c). In the case at bar, §§ 495 and 1708 are not addressed to the same concern or designed to combat the same problem, and therefore we would not expect to find any consideration of their relationship in the legislative history of the latter statute. *See* note 2, *supra*. Neither is ambiguous or general. Therefore the decision in *Simpson* is inapplicable.

The merger rationale of *Prince* and *Gaddis* has been applied in a series of cases involving convictions and sentences for both possession of a controlled substance with intent to distribute and distribution of a controlled substance both in violation of 21 U.S.C. § 841(a)(1). *E. g., United States v. Olivas*, 558 F.2d 1366 (10th Cir.), *cert. denied*, 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 142 (1977).[4] Each of these cases, however, is based on the particular statutory scheme involved and a determination of congressional intent, as was true in *Prince v. United States, supra*, 352 U.S. at 325 & n.4, 77 S.Ct. 403.[5]

The merger concept is inapplicable in the case at bar. Neither § 1708 nor § 495 can be deemed a lesser included offense of the other. *Cf. United States v. Gaddis, supra*, 424 U.S. at 548, 96 S.Ct. 1023; *United States v. Stavros*, 597 F.2d 108 (7th Cir. 1979). Furthermore, as in *Heflin* and *Prince*, the courts in the narcotics cases had before them two substantially related parts of a single section of Title 18, and therefore, absent affirmative support in the legislative histories for a contrary decision, it was reasonable to infer that Congress did not intend to punish an offender for doing the prohibited act as well as having the intent to do it. Here the relationship between the two offenses is far more tenuous. One may enter a bank with the intent to commit a felony and not succeed or simply decide not to commit the felony; also, one may possess narcotics with the intent to distribute and not succeed or decide not to do so. Similarly, one may possess stolen mail, but not utter a forged United States Treasury check, even if the stolen mail happens to be such a check. It cannot reasonably be said, however, that the possession merges with the uttering because unlike entering with intent to rob a bank and robbery or possession with intent to distribute drugs and distribution, there is no necessary relationship between the nature of the first and the second. As the Court explained in *Prince*,

> The gravamen of the [entering] offense is not in the act of entering . . . . Rather the heart of the crime is the intent to steal. This mental element merges into the completed crime if the robbery is consummated.

---

**4.** *Accord, United States v. King*, 521 F.2d 356, 358 (6th Cir. 1975); *United States v. Stevens*, 521 F.2d 334, 337 (6th Cir. 1975); *United States v. Curry*, 512 F.2d 1299, 1305–1306 (4th Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975); *United States v. Atkinson*, 512 F.2d 1235, 1240 (4th Cir.), *cert. denied*, 429 U.S. 885, 97 S.Ct. 235, 50 L.Ed.2d 165 (1975). *See also United States v. Orzechowski*, 547 F.2d 978, 986·987 (7th Cir.), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977) (holding that indictment charging possession with intent to distribute and distribution of a controlled substance in a single count is not duplicitous).

**5.** "[P]etitioner and the Government cite as analogous other cases that involved fragmentation of crimes for purposes of punishment. None of these is particularly helpful to us because we are dealing with a unique statute of limited purpose and an inconclusive legislative history. It can and should be differentiated from similar problems in this general field raised under other statutes. The question of interpretation is a narrow one, and our decision should be correspondingly narrow." 352 U.S. at 325, 77 S.Ct. at 405 (footnote omitted).

*Prince v. United States, supra,* 352 U.S. at 328, 77 S.Ct. at 407. The mental element necessary for possession of stolen mail under § 1708 is wholly unrelated to the offense described in § 495 or the mental element required for that offense.

In short, none of the circumstances that have been held to preclude cumulation are present. Neither the government nor Makres cites any relevant legislative history or other evidence of congressional intent; our research has revealed none. The two statutes are found in different parts of Title 18 and, while that fact is not dispositive, there is nothing to suggest any relationship between them. No single statute deals with both, so *O'Neil* and *Seals* are inapplicable.

Makres also relies on *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), in which the Court held that the interstate transportation of two women in one automobile trip constituted only one violation of the Mann Act, 18 U.S.C. § 2421, et seq., the unit of prosecution being the number of interstate transportations and not the number of women. The "unit of prosecution" concept is inapplicable here, where each of the deposits occurred on a different day, and the two kinds of offenses involved on each day were different in character and required, as we point out below, different elements. In *Bell* the Court relied on the ambiguity of the statutory language and the maxim that ambiguity in a criminal statute "should be resolved in favor of lenity." *Id.* at 83, 75 S.Ct. at 622. *See also Simpson,* which in applying the same maxim cited *Bell* for the proposition that " 'doubt will be resolved against turning a single transaction into multiple offenses.' " 435 U.S. at 15, 98 S.Ct. at 914. In the case at bar we find no statutory ambiguity and hence perceive no doubt similar to that in *Bell* and *Simpson* to be resolved. For the same reasons, *United States v. Powers,* 572 F.2d 146, 150–152 (8th Cir. 1978), involving the appropriate unit of prosecution under 18 U.S.C. § 922(h)(1), and *United States v. Kinsley,* 518 F.2d 665 (8th Cir. 1975), involving the appropriate unit of prosecution under 18 U.S.C. App. § 1202(a), are irrelevant here.

Similarly, Makres' reliance on *U. S. v. Universal C. I. T. Credit Corp.,* 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952), is misplaced. There the Court held that § 15 of the Fair Labor Standards Act, 29 U.S.C. § 215, penalizes a course of conduct. *Id.* at 224, 73 S.Ct. 227. The decision is based on the legislative history of the statute there involved, *id.* at 222–224, 73 S.Ct. 227, and provides no support for the argument Makres makes here. Indeed the Court distinguished *Blockburger* on precisely this ground. *See id.* at 224, 73 S.Ct. 227.

### B.

There remains the question of whether cumulation of the two offenses violates the double jeopardy clause. In this case, involving, as it does, only consecutive sentences and not successive prosecutions, the question is answered by applying the *Blockburger* test. *See Brown v. Ohio, supra,* 432 U.S. at 166 n.6, 97 S.Ct. 2221.

In *Blockburger* the two offenses arising out of a single transaction were (1) selling narcotics in a package other than the original stamped package in violation of § 1 of the Harrison Narcotic Act, 38 Stat. 785, as amended, 26 U.S.C. § 4704(a), and (2) selling them not pursuant to a written order of the purchaser in violation of § 2 of that Act, 38 Stat. 786, as amended, 26 U.S.C. § 4705(a). The Court said,

> Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182. Both convictions and sentences were therefore affirmed. *See also Ianelli v. United States,* 420 U.S. 770, 785–786 n.17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975).

This court applied the *Blockburger* rule in *United States v. Marzano,* 537 F.2d 257, 273

(7th Cir.) *cert. denied,* 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1976), in sustaining convictions under 18 U.S.C. § 2113(b) for taking and carrying away more than $100 from a federally insured bank and under 18 U.S.C. § 2314 for transporting more than $5,000 in interstate commerce knowing it to have been stolen. Although the two offenses were based on the same conduct, they could be punished separately because each required proof of an element that the other did not.[6]

The *Blockburger* test is satisfied in the case at bar. Not only does each statute require proof of a fact the other does not, but, in fact, either of the offenses for which Makres was convicted can be proved without establishing any of the elements necessary to conviction for the other. The charge of possession of stolen mail in violation of § 1708 requires proof that the defendant (1) had in his possession material (2) that had been stolen from the mail (3) knowing that it had been stolen. The charge of uttering a United States Treasury check in violation of § 495 requires proof that the defendant (1) negotiated a United States Treasury check (2) with knowledge that the payee's endorsement was forged and (3) with the intent to defraud the United States. The offenses can therefore be punished cumulatively. *Accord, Wilson v. United States,* 310 F.2d 879 (10th Cir. 1962).

Accordingly, the judgments of conviction are affirmed.

Affirmed.

---

6. *Heflin* and *Milanovich* were distinguished on the ground that Congress in adopting § 2314 had not intended to reach a group of offenders other than bank robbers themselves, as is true of the receiving statute, 18 U.S.C. § 2113(c), *United States v. Gaddis, supra,* 424 U.S. at 548, 96 S.Ct. 1023. *United States v. Marzano, supra,* 537 F.2d at 273.