**UNITED STATES of America, Plaintiff,**

v.

**Jeff BOYD, Edgar Cooksey, Andrew Craig, Charles Green, Sammy Knox, Felix Mayes, and Noah Robinson, Defendants.**

**No. 89 CR 908.**

United States District Court,
N.D. Illinois, E.D.

June 27, 1991.

William Hogan, Ted Poulos, Ross Silverman, John Hartman, Asst. U.S. Attys., Chicago, Ill., for the U.S.

Gary Ravitz, Chicago, Ill., for Henry Andrews.

Robert Clarke, Chicago, Ill., for Thomas Bates.

Kenneth Hanson, Chicago, Ill., for Jeff Boyd.

Peter Schmiedel, Chicago, Ill., for George Carter.

Victor Pilolla, Oak Park, Ill., for Edgar Cooksey.

Eugene O'Malley, Chicago, Ill., for Andrew Craig.

Carl Clavelli, Chicago, Ill., for Jerome Crowder.

Standish Willis, Chicago, Ill., for Lawrence Crowder.

Marianne Jackson, Chicago, Ill., for William Doyle.

Joshua Sachs, Chicago, Ill., for Charles Green.

Donald Paull, Chicago, Ill., for Louis Hoover.

Chris Averkiou, Chicago, Ill., for J.L. Houston.

Robert Raab, Chicago, Ill., for Isiah Kitchen.

Marc Kadish, Chicago, Ill., for Alan Knox.

Michael Falconer, Chicago, Ill., for Sammy Knox.

Keith Spielfogel, Chicago, Ill., for Roland Lewis.

Ron Clark, Chicago, Ill., for Felix Mayes.

Marty Agran, Chicago, Ill., for Derrick Porter.

Robert F. Simone, Philadelphia, Pa., and Anita Rivkin Carothers, Chicago, Ill., for Noah Robinson.

James Graham, Chicago, Ill., for Michael Sardin.

Ron Bredemann, Park Ridge, Ill., for James Speights.

Rick Jalovec, Chicago, Ill., for Freddie Elwood Sweeney.

June Fournier, Long Grove, Ill., for Melvin Tillman.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The United States, pursuant to Federal Rule of Criminal Procedure 24(c), has moved to replace a juror with an alternate. Defendant Noah Robinson and his co-defendants (collectively, "Robinson")[1] have filed a memorandum in opposition. For the reasons set forth below, we grant the government's motion.

### I. Factual Background

Government witness Carolyn Harris notified government attorneys on June 19, 1991 that she knew Juror No. 104[2] as a regular customer at the Why Not Lounge in Chicago, Illinois. The Lounge is located directly across the street from defendant Robinson's home on South Michigan Avenue. The government's lawyers relayed Harris' statements to the court before trial resumed on June 20, and we conducted an individual voir dire of the juror later that same day.

Juror No. 104's answers to our questions reveal several significant areas of concern—areas that, given his failure to candidly answer the initial voir dire questions,[3]

---

1. In addition to Robinson, the other defendants before us in Trial One are Jeff Boyd, Edgar Cooksey, Andrew Craig, Charles Green, Sammy Knox, and Felix Mayes. However, by agreement, only co-lead defense counsel (Robinson's and Mayes' attorneys) were present at the supplemental voir dire; Robinson's attorney alone submitted the brief in opposition to the government's motion (entitled "Defendants' Memorandum in Opposition to Juror Disqualification").

2. The jurors and alternates in this trial were selected anonymously, and have been referred to only by their respective juror numbers.

3. Juror No. 104 was the second member of the venire to be called from a final pool of over 120 potential jurors. Transcript at 17 (May 6, 1991). Before the first group of venire persons was seated in the jury box, the court introduced the government's three lawyers and each defendant and his lawyer(s). *Id.* at 3–5. Defendant Robinson actually stood when introduced and said "Good morning, ladies and gentlemen." *Id.* at 5. After the judge read a summary of the indictment and cleared up some procedural matters, the minute clerk called 17 potential jurors and alternates, by juror number, to the box. *Id.* at 17. The court then asked "a few preliminary questions" to the seated venire persons, the first of which was "Do any of you know any of the defendants in this case [that] I have introduced to you?" *Id.* at 17–18. There was no response. *Id.* at 18. Next, the court asked "Do any of you know any lawyers in this case?" *Id.* Again there was no response. *Id.* After each of the 17 prospective jurors and alternates had been questioned, the court asked the entire group "Is there any question that I have not asked you which might bear upon the question of whether or not you can give both sides a fair trial?" *Id.* at 20. Once again there was no response. *Id.*

More than two months later, the court inquired as to whether Juror No. 104 remembered being asked if he knew any of the defendants. Transcript at 4814 (June 20, 1991). He answered that he thought he was being asked if he knew any of the attorneys. *Id.*

might never have come to light but for Harris' disclosures to the government. After more than two months of trial, the juror first admitted that he had seen defendant Robinson around the neighborhood for "eight or ten years," Transcript at 4814 (June 20, 1991), although he had not seen him for "over a year, close to two." *Id.* at 4810. He denied knowing Robinson; we asked "How long have you known Mr. Robinson?," to which the juror replied "I never knew him. I just saw him." *Id.* at 4814. Notwithstanding this representation, Juror No. 104 admitted to having followed the newspaper coverage of Robinson's state court trial in South Carolina and Robinson's more recent federal trial in this district (although only "slightly"). *Id.* at 4816. He even knew details about Robinson's personal habits—asked if he had ever had drinks with Robinson, the juror allowed as to how he did not think that Noah drank alcohol. *Id.* at 4809. He gleaned this knowledge from a conversation with Holandus "Jake" Oliver, a man whom he thought to be a relative of Robinson's.[4] *Id.* at 4810, 4815.

The juror further admitted that he remembered seeing a woman with a limp in the neighborhood around 109th and South Michigan Avenue. *Id.* at 4807. We take judicial notice of the fact that the government's witness, Carolyn Harris, walks with a pronounced limp. Juror No. 104 denied, however, that he had ever seen Harris behind the bar at the Why Not Lounge, or that he had ever shared a drink with her. *Id.* at 4810. Further, Juror No. 104 stated that the name "Mr. Barber" meant something to him, and that he had seen a Mr. Barber on South Michigan Avenue. *Id.* at 4809. The murder of a Leroy Barber is alleged by the government in Count II of the indictment. *Id.* at 6–7 (summarizing charges in the indictment for jury venire members). Asked "[h]ow long had you ... known [Barber] in the neighborhood," Ju-

ror No. 104 answered "A short time. The reason I remember it so well is because a friend of mine retired from the fire department, he owed him $50. When we found out that he was dead—[answer cut off by court's next question]." *Id.* at 4815. Asked if he was aware of Barber's reputation in the neighborhood, the juror replied, "I never heard nobody say anything about him. Broke most of the time. He never asked me for anything." *Id.* at 4816.

The multiple problems evident in Juror No. 104's answers were not alleviated by Carolyn Harris' testimony, although we are certainly not interested in creating a credibility contest between a witness and a juror. *Cf. id.* at 4806 (credibility concern voiced by Robinson's attorney). For what it is worth, Harris testified that Juror No. 104 was "practically an every-day frequenter" at the Why Not Lounge when she worked there, *id.* at 4818, that she personally had cocktails with him, *id.* at 4821, and that Juror No. 104 was at the Lounge on at least one occasion when the Barber murder was being discussed. *Id.* at 4827.

## II. Analysis

■ A juror may be removed from the jury under Federal Rule of Criminal Procedure 24(c) at the trial judge's discretion. *United States v. Doerr,* 886 F.2d 944, 970 (7th Cir.1989) (citing *United States v. Peters,* 617 F.2d 503, 505 (7th Cir.1980)). Rule 24(c) permits a district court judge to replace with an alternate any juror who becomes or is found to be unable or disqualified to perform his duties. Fed.R. Crim.P. 24(c).[5] A decision to replace a juror with an alternate is subject to an "'abuse of discretion'" review standard, and will not be overturned "'if the record shows *some legitimate basis* for [the] decision.'" *Doerr,* 886 F.2d at 970–71 (emphasis added) (quoting *Peters,* 617 F.2d at 505).

---

4. Jake Oliver testified against the government, at various times, in regard to Robinson's motion to suppress certain evidence. *See United States v. Robinson,* No. 89 CR 908, 1991 WL 70853 (N.D.Ill. April 22, 1991).

5. In pertinent part, Rule 24(c) provides that "[a]lternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." Fed.R.Crim.P. 24(c).

**908**

Judges have validly refused to disqualify a juror in a variety of circumstances. *See, e.g., United States v. Allred,* 867 F.2d 856, 870 (5th Cir.1989) (juror who had "social contact with an investigatory agent [through their] children's skating club" not disqualified); *Howard v. Davis,* 815 F.2d 1429, 1431 (11th Cir.) (homicide victim's "close friend" retained as juror; court accepted juror's representation "that he could be an impartial juror in spite of his relationship with the victim"), *cert. denied,* 484 U.S. 864, 108 S.Ct. 184, 98 L.Ed.2d 136 (1987); *United States v. Tutt,* 704 F.2d 1567, 1569 (11th Cir.) (juror failed to disclose at voir dire his prior affiliation with law enforcement agency or his acquaintance with key government witness; judge's decision to retain juror based on defendant's failure to show actual prejudice), *cert. denied,* 464 U.S. 855, 104 S.Ct. 174, 78 L.Ed.2d 156 (1983); *United States v. Young,* 553 F.2d 1132, 1135–36 (8th Cir.) (judge's decision to retain two jurors—one a bank vice-president, the other the father of a robbery/rape victim—in bank robbery trial upheld; both jurors maintained that they "could be fair and impartial"), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 278 (1977); *Ryan v. United States,* 191 F.2d 779, 782 (D.C.Cir.1951) (juror's private conversation with prosecuting attorney during trial does not rise to Rule 24(c) disqualification level), *cert. denied,* 342 U.S. 928, 72 S.Ct. 368, 96 L.Ed. 691 (1952).

On the other hand, disqualification of a juror has been upheld in as many circumstances. *See, e.g., Doerr,* 886 F.2d at 970–71 (judge acted within his discretion in dismissing two ill jurors and replacing them with alternates); *Peters,* 617 F.2d at 505 (no abuse of discretion in replacing juror who was five minutes late on final day of three-day trial); *United States v. Makres,* 598 F.2d 1072, 1073 (7th Cir.1979) (no abuse of discretion in waiting only twenty-five minutes before dismissing tardy juror); *see also, e.g., United States v. Colkley,* 899 F.2d 297, 303 (4th Cir.1990) (no abuse of discretion in replacing juror who "failed to appear for thirty minutes of testimony"); *United States v. Campbell,* 845 F.2d 782, 786 (8th Cir.) (juror whose parents-in-law knew defendant properly excused), *cert. denied,* 488 U.S. 965, 109 S.Ct. 490, 102 L.Ed.2d 527 (1988); *United States v. Fajardo,* 787 F.2d 1523, 1525–26 (11th Cir. 1986) (juror experiencing "sinus problems" and distracting other jurors by "gagging, sniffling, snorting, blowing his nose, and wiping his nose on his sleeve" properly disqualified); *United States v. Lewis,* 759 F.2d 1316, 1350 (8th Cir.) (juror who did not candidly answer initial voir dire question regarding her child's employment properly replaced with an alternate), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985); *United States v. Barker,* 735 F.2d 1280, 1282–83 (11th Cir.) (no abuse of discretion in disqualifying juror who, on her way to the jury room to begin deliberations, "went over to where the defendant was standing, placed her hand on the defendant's shoulder, smiled, and moved on"; "[n]o conversation occurred"), *cert. denied,* 469 U.S. 933, 105 S.Ct. 329, 83 L.Ed.2d 266 (1984).

■ Here, in contrast to the cases cited above, Juror No. 104 has not one or two potential "disqualifying connections," but *five* (or more) such connections.[6] He has or had at least: (1) a passing acquaintance with Carolyn Harris, a government witness; (2) a somewhat more intimate relationship with defendant Robinson, spanning perhaps a decade; (3) a passing familiarity with a man allegedly murdered by Robinson and co-defendant Cooksey; (4) a passing acquaintance with unindicted co-conspirator Jake Oliver; and, finally, (5) he followed, with varying degrees of closeness, media accounts of Robinson's prior legal battles. Not even Juror No. 104's representation that he "could be a fair and impartial juror to both sides," Transcript at 4817 (June 20, 1991) is sufficient to coun-

**6.** Carolyn Harris testified that she had seen Juror No. 104 and a man named Ollie Permenter talking in the Why Not Lounge on several occasions. Transcript at 4828 (June 20, 1991). Permenter will be a government witness at trial. Government's Motion to Replace Juror at 1. Juror No. 104 was not specifically asked about his relationship with Permenter.

terbalance these five significant concerns, although such a representation might ordinarily be sufficient if there was only one or two such concerns. *See Murphy v. Florida,* 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975). Juror No. 104's assertions of objectivity are further discredited by his apparent reluctance to make full disclosure of the acquaintances in question when he had the opportunity to do so during the initial voir dire.

### III. Conclusion

Given the multiplicity of red flags raised during the course of the June 20, 1991 hearing, we grant the government's motion to replace Juror No. 104 with the next-in-line alternate. It is so ordered.