17 F.3d 1437
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Nolberta BURCIAGA, Defendant-Appellant.
 No. 92-1081.
 United States Court of Appeals, Tenth Circuit.
 March 1, 1994.
 
 ORDER AND JUDGMENT[1]
 Before SEYMOUR, Chief Judge, and ANDERSON and EBEL, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. Therefore, the case is ordered submitted without oral argument.
 
 
 2
 This is a direct criminal appeal from a conviction of one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. 841(a)(1), and one count of conspiracy, in violation of 21 U.S.C. 846. The Defendant-Appellant, Nolberta Burciaga, raises four issues: (1) whether the government seized a pager and cash in violation of the Fourth Amendment; (2) whether the government engaged in a custodial interrogation without first administering Miranda warnings, in violation of the Fifth Amendment; (3) whether defense counsel's failure to object to the admission of the pager, cash, and statements constituted ineffective assistance of counsel in violation of the Sixth Amendment; and (4) whether the district court erred in enhancing Burciaga's offense level pursuant to the Sentencing Guidelines because Burciaga was an "organizer."
 
 I. Background
 
 3
 The arrest and ultimate conviction of Burciaga arose from events occurring during a DEA investigation of Mario Pachelli. In November 1991, a DEA special agent contacted Pachelli to discuss the possibility of purchasing cocaine. The DEA agent instructed Pachelli to call the agent's pager if Pachelli was interested in selling between two and ten kilograms of cocaine. On December 4, 1991, Pachelli called the agent's pager to report that his supplier was in town and to offer to sell the agent one kilogram of cocaine. Pachelli requested that the agent meet him across the street from Pachelli's house in the parking lot of a Safeway supermarket. Pachelli informed the agent that he and "his source" would be watching for the agent's red Corvette. After the agent arrived at the parking lot, Pachelli approached him from an alley adjacent to Pachelli's house. When the agent produced the agreed-upon cash, Pachelli departed to retrieve the drugs. Pachelli returned shortly thereafter, again approaching the agent's car from the alley adjacent to Pachelli's house. After Pachelli presented the cocaine, the DEA surveillance team converged on the scene and arrested Pachelli. In addition, the agent who portrayed the role of drug purchaser directed other agents to search for Pachelli's supplier--near Pachelli's house across the street and in the direction from which Pachelli initially approached the agent's car.
 
 
 4
 Three DEA agents discovered Burciaga walking down the alley adjacent to Pachelli's house and in the opposite direction from the Safeway parking lot. The agents testified at trial that Burciaga was the only person they saw near Pachelli's home immediately after arresting Pachelli. The agents ran toward Burciaga, identified themselves as federal agents, and ordered Burciaga to stop. They asked Burciaga to identify himself, to explain his presence in the alley, and to reveal whether he was a United States citizen. The agents testified at trial that Burciaga offered inconsistent statements, explaining to one agent that he had just arrived from Mexico on a bus and informing another agent that he had just departed from the nearby Safeway where he had obtained an employment application.
 
 
 5
 In the agents' ensuing frisk of Burciaga, they seized a pager clipped to Burciaga's belt and $1,360 in cash from his pocket. A fourth DEA agent soon arrived and informed Burciaga that he was not under arrest, but that he would like to ask Burciaga some questions. This agent asked Burciaga why he was walking in the alley, to which Burciaga responded that he had just arrived on a bus and was looking for a job. The agent testified at trial that Burciaga's responses prompted him to direct a fellow agent to handcuff Burciaga and to inform Burciaga that the handcuffs were "for our security as well as [yours]."
 
 
 6
 Meanwhile, Pachelli gave the agents who had arrested him permission to search his house and revealed to them the telephone number of his drug supplier. When an agent dialed the number, Burciaga's pager was activated and the agents promptly arrested Burciaga. Next, Pachelli identified Burciaga as the person who supplied the cocaine for the sale to the DEA agent. One agent testified that approximately thirty-five minutes elapsed between the agents' initial contact with Burciaga in the alley and the formal arrest.
 
 
 7
 On December 19, 1991, Burciaga was indicted, along with Mario Pachelli, in the United States District Court for the District of Colorado on one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. 841(a)(1), and one count of conspiracy, in violation of 21 U.S.C. 846. At trial, the government introduced Burciaga's statements, the pager, and the cash. In exchange for a government motion for a twenty-five percent reduction in his sentence, Pachelli testified that Burciaga had supplied him with the cocaine seized during the fateful sale on December 4, 1991 in the Safeway parking lot. Pachelli further testified that Burciaga was inside in Pachelli's house when Pachelli departed to conduct the cocaine sale. Before us is Burciaga's direct appeal from his conviction on both counts.
 
 II. Evidentiary Issues
 
 8
 We turn first to Burciaga's claim that the DEA agents seized a pager and $1,360 in cash in violation of the Fourth Amendment and violated the Fifth Amendment by questioning Burciaga prior to administering the Miranda warnings.
 
 
 9
 As Burciaga concedes, we review the seizure and Miranda issues under the plain error standard because Burciaga neglected to raise these claims in the district court by filing a pretrial suppression motion or objecting at trial. U.S. v. Orr, 864 F.2d 1505, 1508 (10th Cir.1988). Pursuant to F.R.Crim.P. 52(b), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Just last term, the Supreme Court articulated the three factors that inform our plain error analysis under Rule 52(b). U.S. v. Olano, 113 S.Ct. 1770, 1776-78 (1993). First, we must determine whether the district court committed an error by admitting the seized items and Burciaga's statements. Id. at 1777. Next, we must find that the error was plain, clear, or obvious. Id.; U.S. v. Brown, 996 F.2d 1049, 1053 (10th Cir.1993). Finally, the plain error must have "affect[ed] substantial rights," which "in most cases ... means that the error must have been prejudicial [i.e.] [i]t must have affected the outcome of the District Court proceedings." Olano, 113 S.Ct. at 1777-78; Brown, 996 F.2d at 1053 (error must "seriously affect the fairness, integrity, or public reputation of judicial proceedings").
 
 
 10
 Consistent with Olano, Burciaga "bears the burden of persuasion with respect to prejudice." Olano, 113 S.Ct. at 1778. Based on our review of the record, we conclude that Burciaga fails to demonstrate that the district court committed plain error by admitting the seized items and Burciaga's statements. Olano, 113 S.Ct. at 1778.
 
 III. Ineffective Assistance of Counsel
 
 11
 We next address Burciaga's claim that the failure of his counsel to object to the admission of the statements, pager, and cash constituted ineffective assistance of counsel in violation of the Sixth Amendment.
 
 
 12
 "[I]neffective assistance of counsel claims are ordinarily inappropriate to raise on direct appeal because the necessary fact finding can best be done on collateral attack." U.S. v. Mejia-Alarcon, 995 F.2d 982, 992 (10th Cir.), cert. denied, 114 S.Ct. 334 (1993). The exceptions to this general rule include those "rare cases" in which the ineffective assistance of counsel claim is confined to matters in the trial record or does not require additional factual inquiry. Beaulieu v. U.S., 930 F.2d 805, 807 (10th Cir.1991). Burciaga's claim, however, does not fit into this special class of cases and we therefore decline to reach the merits of the ineffective assistance claim in this direct appeal.
 
 
 13
 Burciaga's ineffective assistance of counsel claim turns on his counsel's decision not to file a motion to suppress. To prevail on this Sixth Amendment claim, Burciaga must demonstrate that his counsel's performance was both deficient and prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984). To overcome the presumption "that counsel's conduct falls within the wide range of reasonable professional assistance," Burciaga must show that, but for the counsel's failure to file a motion to suppress, there exists a reasonable probability that the result of his trial would have been different. Id. at 689, 694. On the basis of the trial record alone, we cannot determine the merit of Burciaga's allegations concerning his counsel's evidentiary decision. Even assuming that counsel was deficient in not filing the motion to suppress and that he would have prevailed in the motion to suppress Burciaga's statements, the pager, and the cash, the trial record offers insufficient information on which to assess the prejudicial impact of the counsel's decision under the Strickland test. Beaulieu, 930 F.2d at 808 (counsel's failure, among other things, to file a motion to suppress was unreviewable on direct appeal).[2]
 
 
 14
 Because a collateral attack under 28 U.S.C. 2255 would permit the necessary fact-finding to assess Burciaga's ineffective assistance of counsel claim, we decline to review it in this direct appeal.
 
 IV. Sentence Enhancement
 
 15
 The final issue raised in Burciaga's appeal is whether the district court erred in adjusting Burciaga's offense level upward two levels after finding that Burciaga was an organizer pursuant to U.S.S.G. 3B1.1(c).[3] We review the court's finding under the clearly erroneous standard. U.S. v. Hernandez, 967 F.2d 456, 458 (10th Cir.1992).
 
 
 16
 We have upheld a court's finding that a defendant qualified as an organizer or supervisor under U.S.S.G. 3B1.1(c) when evidence shows that the defendant "exercised any degree of direction or control over a subordinate in the criminal scheme." U.S. v. Morgan, 936 F.2d 1561, 1574 (10th Cir.1991), cert. denied, 112 S.Ct. 1190 (1992). Here, the court identified Burciaga as Pachelli's source and the person who, in large part, orchestrated the attempted sale to the DEA agents. "It was Mr. Burciaga who was ultimately calling the shots about where the transaction was to take place ... how much drugs there was going to be, and the date." Record at 250.
 
 
 17
 Burciaga contests the court's finding by arguing that the court misread U.S.S.G. 3B1.1(c) to require, for every instance in which more than one person participates in criminal activity, that one person was the organizer. In Burciaga's view, if the court had not felt compelled to designate an organizer, it would not have enhanced Burciaga's offense level. We do not read 3B1.1(c) as requiring a court, in every case involving multiple participants in a criminal enterprise, to designate one of the participants as an organizer, leader, manager, or supervisor. "When an offense is committed by more than one participant, 3B1.1 or 3B1.2 (or neither ) may apply." U.S.S.G. 3B1.1, Introductory Commentary (emphasis added). However, we disagree with Burciaga's assertion that the court engrafted such a requirement on 3B1.1 and, in the absence of having done so, would not have determined that Burciaga was an organizer. The court pointed to specific facts in the record to support its finding. Further, the transcript of the sentencing proceedings does not support Burciaga's contention that the court felt compelled to find an organizer based on a misreading of 3B1.1(c).
 
 
 18
 We therefore conclude that the court's determination that Burciaga was an organizer was not clearly erroneous.
 
 
 19
 We AFFIRM.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Burciaga's showing of prejudice must be made "in view of the strength of the government's case." U.S. v. Miller, 907 F.2d 994, 997 (10th Cir.1990). For instance, the cross-examination of Pachelli revealed that Pachelli agreed to testify against Burciaga in exchange for a government motion for a twenty-five percent reduction in his sentence. We cannot judge on the record before us whether the jury might have viewed Pachelli's testimony in a different light if it had not had Burciaga's statements, the pager, and the cash to link Burciaga to Pachelli
 
 
 [3]
 Section 3B1.1(c) provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity ... increase by 2 levels."